Nanette Dembitz, J.
This is a proceeding for enforcement and payment of arrears under a Mexican divorce decree, which incorporated (without merging) a separation agreement. Respondent concedes his ability to maintain the agreed and decteed payments. He contests the continuance of his obligation under the decree, not as a personal hardship but as a matter of legal principle. He asserts that petitioner is and can be self-supporting, and that developments in the law have rendered invalid the doctrine as to an ex-husband’s fixed and perpetual obligation under a decree incorporating a separation agreement.
Petitioner and respondent were married in July, 1961, and signed a -separation agreement in June, 1967 which was incorporated in a Mexican decree in September, 1967. Respondent initiated the separation and agreed to pay petitioner $225 a month. Petitioner and respondent are childless and neither have remarried. The validity of the no-rpeme-nf í® r,Qrp under attack, but only its enforcement through the special remedies applicable to enforcement of marital decrees.
I.
Goldman v. Goldman (282 N. Y. 296) permitted a downward modification of decreed support even though the decree had incorporated the terms of a separation agreement. However, Goldman was based on the ex-husband’s reduced means. The court did not there indicate that in spite of an agreement all the circumstances — such as the ex-wife’s capacity for self-support — should be considered in framing an initial marital decree *13 or its modification, as they would be absent a separtion agreement. Apparently continuing in effect were the doctrines that support fixed by agreement should be adopted in the marital decree (Galusha v. Galusha, 116 N. Y. 635), and that alimony derived from an agreement is less flexible in response to changing circumstances than judicially-fixed alimony (Schmelzel v. Schmelzel, 287 N. Y. 21; McMains v. McMains, 15 N Y 2d 283; but cf. Hoops v. Hoops, 292 N. Y. 428, 433).
The question stirred by respondent is whether the drastic legislative change in 1967 of providing for “conversion” divorces — divorces grounded on compliance with separation decrees or agreements — should occasion a change in the prior judge-made doctrine as to the significance in marital decrees of an agreed amount for wife-support. While this court is reluctant, as a lower court, to posit rulings on issues yet unreviewed by appellate courts, respondent’s contention necessitates such a legal exercise To reach a fitting conclusion on the enforcement of respondent’s Mexican divorce decree which incorporates a separation agreement, consideration must be given to the impact of the new consensual divorce provision on in-gtate as well as foreign proceedings.
H.
Kover v. Kover (29 N Y 2d 408) upholding the grant of a divorce grounded on a period of compliance with a separation decree, held that alimony could be set de novo in the divorce proceeding on the basis of the alimony standards prescribed by section 236 of the Domestic Eelations Law. Kover obviously can be distinguished from the case of a divorce based on compliance with a separation agreement.[1] Nevertheless, consistency as to conversion divorces would argue for a similar use of agreement-compliance as the ground for the divorce, without tying alimony to the agreed sum. Lewis v. Lewis (37 A D 2d 725 [2d Dept.]) though decided prior to Kover, indicates such an approach: that in a conversion divorce grounded on compliance with a separation agreement, the court should fix alimony in accordance with section 236, and in particular should consider capacity for self-support.[2] Compare Matter of Steinberg v. Steinberg (18 N Y 2d 492, 497) as to the consistent use in various types of actions of the standards prescribed in section 236.
*14 in.
In support of authority to fix alimony de novo in all conversion divorce decrees, various other arguments of policy and principle can also be advanced. In the first place, with New York divorce decrees now grounded on compliance with separation agreements, the agreement assumes an increased and indeed a public function:[3] it can be argued that for the purpose of a divorce an agreement induced or exacted by a promise to pay either more or less than the amount appropriate under section 236 is against public policy. And it might be urged that the Legislature could not have intended to make divorce completely consensual in the .sense that a separation agreement now grounds a divorce and would also continue to determine the amount of alimony.
Thus, the new conversion divorce provision highlights the inconsistency between tying a divorce decree to the agreed amount and the principle that alimony is not a matter of private interest, but is instead to be determined on the basis of numerous factors “ as public policy requires ”. (Brownstein v. Brownstein, 25 AD 2d 205,208 [1st Dept.].) The question posed in Goldman may now be viewed as presenting an over-all dimension: the question of whether the courts should “ make available for the enforcement of a contractual obligation voluntarily assumed the drastic remedies provided by law for the enforcement of a marital obligation created by law.” (282 N. Y. 296, 301).[4]
Finally, a separation agreement is a unique type of contract in which the wife’s consideration is her sacrifice of her right to support — a right implied by law from the marriage contract.[5] However, in the years since the establishment of this doctrine, the Domestic Relations Law has provided — and the decisions have increasingly emphasized — that the wife’s right to support is only conditional, depending in part on her capacity for self-support (Kover v. Kover, 29 N Y 2d 408, 414, 416-417, supra)[6] *15 Thus, if the agreement is enforced through decree regardless of whether the wife can support herself, the court is using its drastic remedy to enforce an obligation for which realistically the consideration may only have been the wife’s willingness to furnish grounds for divorce under the new conversion provision.
IV.
Against these arguments and in support of fixing alimony at the agreed amount regardless of the standards of section 236 and of changing circumstances, is the original reasoning that ‘ ‘ the law looks favorably upon and encourages settlements made outside of courts between parties to a controversy ” (Galusha v. Galusha, 116 N. Y. 635, 646, supra); the interest of the parties in certainty; the undesirability of burdening the courts with scrutinizing the agreed amount and fixing alimony; and the distaste for different results in an action on the decree from an action on the agreement (see King v. Schultz, 29 N. Y. 2d 718). It seems to this court doubtful that these concerns should prevail over the policies in favor of extending the Kover doctrine to conversion divorces based on compliance with separation agreements.
It is true that a refusal to decree enforcement of agreements may discourage their execution. However, it would hardly be appropriate for the courts to encourage consensual divorce by decreeing terms which, though necessary to induce agreement, are inconsistent with the alimony standards of the Domestic Relations Law.
V.
Assuming therefore that the courts will extend the Kover rule to conversion divorce decrees grounded on compliance with separation agreements, should the practice of untying the decree from the agreement also apply to modification of pre-existing decrees incorporating agreed .support, like the one at bar?
If alimony will be decreed in New York conversion divorces on the basis of section 236 standards (with a presumption perhaps in favor of the agreed figure), it would seem anomalous to apply to foreign divorces, which were in reality obtained on a consensual basis, a different rule from that applicable to New York consensual divorces.[7] The fact that the agreement may have been executed with the expectation of its enforcement by *16 decree does not give either party a vested interest in perpetuation of that result. The parties must accept a change in decisional law in response to statutory change. (Cf. Gleason v. Gleason, 26 N Y 2d 28.)
We need not consider Mexican law on the issue at bar; the public policy of New York must prevail in a case like the instant one over the interest in comity.
Considering the agreement-conversion divorce provision together with relevant appellate rulings, it appears that it is this court’s duty to determine petitioner’s petition for enforcement, and respondent’s application for modification, of their Mexican decree on the basis of the factors prescribed by section 236 of the Domestic Relations Law for the fixing of alimony.[8] While ordinarily the court would only consider a change of circumstances since the last court consideration of the decree, inapplicable to this case is the justification for that procedural rule that courts cannot be asked to repeat decision of the same question. (Kover v. Kover, 29 N Y 2d 408, 413, supra.) Here the relevant factors have never received judicial consideration. Their review now is occasioned by a change in legal circumstances.
VI.
As respondent contends, it appears that petitioner is and can be self-supporting in that her net earnings for 1971 were $7,163 as a public school music teacher. However, it also appears that she cannot support herself in accordance with the preseparation standard of living.
The current cultural doubt of the concept that a woman’s economic security rests in matrimony, may eventually result in a change in the principle that an ex-wife is entitled to support to maintain the preseparation standard of living.[9] And in that the provision for consensual divorce rejects the concept of permanent marriage (absent marital fault), this new standard may presage a change in the rule that an ex-husband’s obligation of support is perpetual and in particular that it is perpetually tied to the preseparation standard. However, to date the appellate courts continue to assert the binding importance of the preseparation standard. (Kover v. Kover, 29 N Y 2d 408, 415-416, supra; see McMains v. McMains, 15 N Y 2d 283, 292, Fuld, J. dissenting; Bottner v. Bottner, 39 A D 2d 680 [1st Dept.].)
*17 Since the alimony provided by the instant Mexican decree incorporating the separation agreement scarcely assures the preseparation standard, petitioner’s petition for enforcement must be granted and respondent’s prayer for modification must be denied. It may be noted that the amount is a modest one in view of the disproportion between petitioner’s earnings and respondent’s — preseparation of approximately $20,000 annually and currently of $47,000. (See Kover v. Kover, 29 N Y 2d 408, 420, supra.)
The arrears in payments now being substantial, respondent is directed to pay petitioner the $225 monthly provided in the decree and agreement, plus $100 monthly on arrears, the total monthly payment beginning September 1, 1972 with a cash bond to be ordered in the event of default.
Petitioner’s counsel requests an award of counsel fees pursuant to section 438 of the Family Court Act. Respondent does not contest the value of petitioner’s counsel’s services; and respondent’s reliance on decision denying counsel fees in cases such as the instant one overlooks the amendment of section 438 invalidating those decisions. Petitioner’s counsel has received no fee from petitioner or anyone on her behalf nor has he any agreement for the payment of any fee. While Kann v. Kann (38 A D 2d 545 [1st Dept.]) indicates that caution must be used in a fee award when petitioner is not indigent,[10] nevertheless this court does not read Kann as entirely prohibiting an award when petitioner’s earnings enable her to live only modestly. Accordingly, in view of the services rendered by petitioner’s experienced and diligent counsel and all the circumstances, a counsel fee of $1,200 appears reasonable, payable in installments of $600, one on September 1,1972 and one on October 1,1972.

. See Kover v. Kover (29 N Y 2d 408, 413) and Gleason v. Gleason (26 N Y 2d 28, 41) as to “the differences between separation decrees and separation agreements.”

. See, also, Hummel v. Hummel (62 Misc 2d 595); cf. Eylman v. Eylman (23 A D 2d 495 [2d Dept.]).

. Cf. Shelley v. Kraemer (334 U. S. 1, 13); Barrows v. Jackson (346 U. S. 249, 253).

. As to the harshness and coercive force of the remedy of contempt and possible imprisonment for violation of a marital decree, as compared to a money judgment for violation of the separation agreement, see Burdick v. Burdick (183 App. Div. 488, 490 [3d Dept.]).

. See Fearon v. Treanor (272 N. Y. 268, 271-272); Carpenter v. Osborn (102 N. Y. 552, 560); Galusha v. Galusha (116 N. Y. 635, 643); Tirrell v. Tirrell (232 N. Y. 224, 229).

. In awarding support in the Family Court in the absence of a decree, the standards of section 236 are controlling. (Matter of Steinberg v. Steinberg, 18 N Y 2d 492.)

. But cf. Kaye v. Kaye (38 A D 2d 753 [2d Dept.]); Fink v. Goldblatt (18 A D 2d 629 [1st Dept.]).
Research discloses no out-of-State decisions dealing with the issue at bar.

. This is not a matter of reforming a separation agreement, which lies outside the Family Court’s power. (King v. Schultz, 29 N Y 2d 718; Kaye v. Kaye, 38 A D 2d 753 [2d Dept.].)

. Cf. Foster and Freed, Law and Family, N. Y. L. J., June 30,1972, p. 1.

. Followed in Winter v. Winter (39 A D 2d 69 [1st Dept.]).