Bertram Harnett, J.
In August, 1970, Yolanda Santamaría and her ex-husband William stipulated in court to incorporate into their 1969 Mexican divorce judgment the provisions of a prior separation agreement which were inadvertently omitted from the decree. This court signed an order on April29, 1971 effectuating the .stipulation and modification of the foreign • decree and directing, inter alla, payment of $2,000 by Mr. Santamaría at a rate of $500 per month, recovery from him of $2,060 in support arrears, and a $500 counsel fee payment to the wife withiii 30 days. Now, in conjunction with Mrs. Santa-maria’s motion for a finding that her ex-husband is in contempt of these directives, he moves to vacate the prior modification order on the grounds that this court, indeed any New York court, lacks jurisdiction to modify a foreign decree without alimony provision.
Mr. Santamaría argues that New York courts have no power to alter the Mexican decree, which is modifiable, he says, only by Mexican courts according to Mexican law. He asserts that since the parties could not confer this power upon this court by stipulation, the New York order made incorporating the separation agreement in the Chihuahua Civil Court judgment is void. He suggests that Mrs. Santamaría can proceed to alter the divorce decree only by way of traveling to Mexico and initiating the proper proceedings there.
This line of reasoning might well be persuasive, but for two factors. First, there is both statutory and decisional authority which squarely establish that foreign divorce decrees may be modified by New York courts. Second, special circumstances here reflecting total agreement 'of the parties that alimony was intended to be included in the Mexican decree favor modification.
'Subdivision (c) of section 466 of the Family Court Act, as amended in 1965, empowers the Family Court to “ entertain *659 an application to modify the divorce order or decree granting alimony [in a court of competent jurisdiction outside New York] on the ground that there has been a subsequent change of circumstances and that modification is required ”. In Matter of Seitz v. Drogheo (21 N Y 2d 181) the Court of Appeals held that the Supreme Court has concurrent jurisdiction with the Family Court over such applications pursuant to article "VT of the New York Constitution and therefore it too has the authority to modify a foreign decree. This modification power adheres even where a prior separation agreement’s provisions are incorporated in the foreign decree, for both decreases in support and alimony provisions (McMains v. McMains, 15 N Y 2d 283, as well as increases, Kagen v. Kagen, 21 N Y 2d 532; see Gutillo v. Gutillo, 30 A D 2d 484; Cooperman v. Cooperman, 62 Misc 2d 745; cf. Schmelzel v. Schmelzel, 287 N. Y. 21). The rights flowing from the separation agreement are theoretically not abridged by modification of the decree and are therefore still separately enforceable. (Cf. Kagen v. Kagen, supra, pp. 532, 538 [Jasen, J. dissenting].)
Substantial changed circumstances alone will justify modification. Here, the failure of the wife to incorporate the agreement when she obtained the divorce in Mexico was admittedly inadvertent. And, upon mutual realization of the error, both sides agreed that such changed circumstances existed to warrant the modification. Here, unlike both Kagen and McMains (where the decree to be modified had incorporated the agreement), the original judgment did not embody the separation agreement and the modification incorporating it in no way jeopardized or conflicted with contractual rights.
Defendant’s salient point is that subdivision (c) of section 466, by its language, confers jurisdiction over applications to modify foreign decrees only where: “ a court of competent jurisdiction not of the state of New York shall enter an order or decree granting alimony or support ”. Family courts have declined jurisdiction in cases where the out-of-state decree declined to award alimony. (Matter of Warden v. Warden,. 68 Misc 2d 1080; Matter of Fine v. Fine, 65 Misc 2d 87; Matter of Infanto v. Infanto, 66 Misc 2d 699.) The reasons given, however, concentrate more on consideration of full faith and credit as to a sister State court’s denial of alimony after full presentation of the issues (Warden v. Warden, supra) and a hesitancy to invoke the statutorily limited Family Court jurisdiction to create a right to alimony where, in effect, it had been waived, or found unwarranted, in the foreign decree. (Matter of Infanto *660 v. Infanto, supra, pp. 702-708; Chrestman v. Chrestman, 60 Misc 2d 780.)
The Supreme Court in New York has a broader and more general jurisdiction in matrimonial matters. (N. Y, Const., art. VI, § 7 [a]; .see Doe v. Doe, 50 Misc 2d 255.) Though still limited by subdivision (c) of section 466 of the Family Court Act, this court had and has the power and duty to look into all the circumstances surrounding the foreign decree to determine the significance of decretal silence on the alimony point, and therefore the import of incorporating alimony in the separation agreement.
First, there was, of course, no contested trial of the matter, and, in fact, no determination at all by the Mexican court on the issue of alimony. The matter was never raised by Mrs. Santamaría, mistakenly, and the court did not therefore determine on the merits that alimony should not be granted. In point of fact, both parties have all along agreed that alimony would be paid and that the divorce decree should so provide.
It is almost inconceivable that .the Mexican court here, if asked to, would have declined to incorporate the agreement since the common practice in these speedy divorce proceedings is to honor such requests generally made on consent. Accordingly, there is absent here any element of a New York court contradicting or overruling a considered Mexican alimony determination.
Moreover, there is a significant difference in the view of New York courts towards alien decrees and decrees of sister States. Whereas another State’s divorce judgment entitlement to full faith and credit in New York is a profound principle upon which the Federal system in this country rests, the court orders of foreign nations are respected only insofar as comity requires. (Cf. Williams v. North Carolina, 325 U. S. 226 and Milbank v. Milbank, 36 A D 2d 292, affd. 29 N Y 2d 844, with Rosenstiel v. Rosenstiel, 16 N Y 2d 64, cert. den. 383 U. S. 943; Busk v. Busk, 18 A D 2d 700.) Where a foreign country is but a brief haven for New York couples seeking divorce, and the family resides in New York, there are important reasons for tipping comity considerations in favor of New York’s power to enforce, supervise and modify the decree. The jurisdiction with the closest continuing relationship to the family, even after marital breakup, is most closely connected to the facts and needs concerning the terms of the breakup.
The public policy in New York does not favor any disallowances of alimony for a wife, whether by agreement or foreign decree. (General Obligations Law, § 5-311; McMains v. *661 MeMains, 15 N Y 2d 283, supra; Matter of Calwil v. Calwil, 34 A D 2d 535.) Moreover, there are equitable considerations here in favor of upholding the modification. The history of events thus far demonstrates conclusively that both parties intended the decree to incorporate the separation agreement.
Mr. Santamaría signed the separation agreement as a resolution of a separation action commenced in Supreme Court, Queens County. As stated in paragraph XIII of the agreement, he had ‘ ‘ independent legal advice by counsel of his * * * own selection [and he] fully understood] the facts and [had] been fully informed of his * * * legal rights and liabilities ”. The agreement specifically provided in paragraph XII that it “ be made part and parcel of any interlocutory or final decree ” and “ not be merged ” in the decree.
In August, 1970, Mr. Santamaría by his counsel stipulated before this court to incorporate the agreement in the decree, after Mrs. Santamaría mistakenly forgot to do so when in Mexico obtaining the divorce. Eight months later the order embodying the stipulation was submitted without opposition. And, Mr. Santamaría has in fact made many payments in compliance with the modified decree, as well as the agreement. At no time until May 14,1973 did he question the fairness or validity of the modification or the power of the court to make it. Only after Mrs. Santamaría moved to punish him for disobeying the decree did he attempt to vacate it. Since this court had subject matter jurisdiction over the modification application, (cf. Eckert v. Eckert, 34 A D 2d 684), there is nothing persuasive in the history of the case militating in favor of this 11th hour, last ditch, Johnny-come-lately attempt to avert judicial scrutiny of his disobedience of the modified mandate. He has no conceivable claim of mistaken understanding.
Moreover, Mrs. Santamaría, it is clear, has relied on his agreement and stipulation in this regard, to her detriment now if he is allowed to assert the technical jurisdictional ground. Considering Mr. Santamaría’s full and complete participation in and commitment to the agreement’s incorporation into the decree, he is estopped from asserting any equitable defense to evade such a provision in the decree. See Lappert v. Lappert (20 N Y 2d 364) where an ex-husband was held estopped from asserting extinguishment of support and alimony because of his in-court stipulation to pay them.
In any event, Mr. Santamaría is bound to honor the modified decree because he has contracted to do so, twice. The separation agreement and the stipulation made in court are both *662 enforceable contracts. (Campbell v. Bussing, 274 App. Div, 893; Morse v. Morse Dry Dock & Repair Co., 249 App. Div. 764; cf. Matter of Dolgin Eldert Corp., 31 N Y 2d 1.) In them he agreed to make the stated support payments and to incorporate the agreement into the divorce decree. In failing to make, payments as agreed and directed he has undeniably breached his contractual obligations and run afoul of the judgments made. He has shown no basis for abrogating these prescribed responsibilities. (cf. Anders v. Anders, 6 A D 2d 440; Yonkers Fur Dressing Co. v. Royal Ins. Co., 247 N Y 435.)
Accordingly, Mr. Santamaría’s motion to vacate this court’s order dated April 29, 1971 is denied. (Matter of Belt v. Belt, 67 Misc 2d 679.)
Before a foreign decree can be enforced by use of equitable sanction in New York, it must be reduced to a judgment or order of this State, properly served on a oar tv over whom the court has jurisdiction. (Domestic Relations Law, § 243; Lombardo v. Lombardo, 37 A D 2d 993.) Here, the foreign decree as modified was judicially prescribed by this court in its order of April 29, 1971 and, although it was not served personally upon Mr. Santamaría, as required by section 245 of the Domestic Relations Law for a contempt finding, he has not objected to the service by mail used, has appeared fully in his own defense here, and has therefore waived any technical defense of service. (See O’Meara v. O’Meara, 27 A D 2d 655.) Mr. Santamaría does not deny any of the arrearages asserted by his ex-wife under the modified decree, instead raising the sole defense, now rejected, that this court’s prior modification order was jurisdictionally invalid. He makes no claim that the modification incorporating the separation agreement, at least as to the alimony payments due of $80 per week, was or is vague or unclear. He does not assert any inability to make the directed payments. The court will therefore accept the asserted defaults as being admitted in substance by the ex-husband.
Accordingly, the court finds that Mr. Santamaría has failed to pay 26 weeks of alimony at $80 apiece, $500 of the $2,000 directed to be paid at $500 per month, for a total sum' of $2,580 and $500 in counsel fees.
Yet, despite the undisputed amount of arrears, the court is reluctant at this point to find the husband in contempt. There is a certain complexity to the procedures thus far pursued and, now that the husband’s obligations are clear under the pertinent agreements and decrees, he should be given an opportunity to comply before the severe sanction of contempt is levied. In *663 view of the entire circumstance, a judgment for the outstanding sums is appropriate pursuant to section 244 of the Domestic Relations Law and on general contract principles. Should these amounts not be paid or further violations occur, the wife may remove for a contempt finding.
The motion for an order adjudging defendant to be in contempt is therefore denied. Judgment may be entered against defendant in the total sum of $3,080.