Nanette Dembitz, J.
This is a proceeding for enforcement of a Mexican divorce decree issued in 1962, incorporating a separation agreement. The major legal issue is whether, for the purpose of this court’s entry of a current support order, the decree is to he treated as incorporating the separation agreement as it was originally signed in 1962, prior to the decree, or as it was modified in 1963.
Under the agreement as signed in 1962, the support payment required for petitioner, the former wifp, and for the child of the marriage is $1,250 a month; petitioner seeks a support order of that amount. In the 1963 modification, the monthly support payments were reduced to $833.33. The former husband, herein *766 termed respondent, by his cross petition eontends that the Mexican decree should be deemed to incorporate the 1963 modification and that the monthly support thereby required of $833.33 should be modified downward.
1. Estoppel and Waiveb
Respondent argues that petitioner is estopped from asserting a claim based on the original agreement to pay $1,250 monthly, because of her failure for over 10 years to assert it. Respondent has not succeeded in showing such prejudice from petitioner’s conduct as would establish an estoppel (see Ludwig v. Ludwig, 39 A D 2d 456, 457); and Greenberg v. Greenberg (43 A D 2d 422), cited by respondent, is therefore inapplicable. However, petitioner’s abstinence from an effort to enforce the 1962 provision is pertinent to the issue of waiver.
The 1963 modifying agreement provided that “the parties * * * forever discharge each other from * * * all actions, suits, debts, claims., demands and obligations whether in law or in equity which either of them ever had, now has or may hereafter have * * * by reason of any matter, cause or thing ” prior to the agreement. Petitioner’s failure to assert for more than 10 years a right to the original amount of support indicates her understanding that this language covered the Mexican decree, as it literally does. It is true that modification of the decree is not specifically mentioned (cf. Ludwig, supra; Martin v. Martin, 5 A D 2d 307, 310; Aldrich v. Aldrich, 220 App. Div. 555, 557-559, app. dsmd. 247 N. Y. 563); however, waivers of decretal enforcement have been found under circumstances similar to those at bar. (See Axelrad v. Axelrad, 285 App. Div. 903, affd. 309 N. Y. 687; Di Giacomo v. Di Giacomo, 1 Misc 2d 731; Brant v. Brant, . 23 Misc 2d 646; Magrill v. Magrill, 16 Misc 2d 896, 903; Meyers v. Meyers, 201 N. Y. S. 2d 466; March v. Rumish, 70 Misc 2d 24; but, see, Gerwitz v. Gerwitz, 189 App. Div. 483, 485.)
Petitioner waived her right to enforce the Mexican decree to any greater extent than that .specified in the 1963 modification of agreement.
2. Modification of Decree in Accordance with Modification of Agreement.
The basic rationale as to the relationship between agreements and matrimonial decrees supports — despite some divergent tendencies — the same result as the waiver doctrine: that is, that the Mexican decree should be viewed as incorporating the modified agreement.
*767 It is true that Van Name v. Applegate (44 A D 2d 726, 727) held that a Mexican decree incorporating a separation agreement could not be deemed to incorporate its subsequent modification. The view that a decree incorporates the agreement as it stood at the time of the decree’s issuance, stems in part from the leading case of Rehill v. Rehill (306 N. Y. 126). Rehill held that when a Nevada divorce decree had incorporated and “confirmed” a separation agreement, New York could not reform the agreement. If the decree immunizes the agreement from modification through judicial reformation, it might likewise be deemed immunized, for the purpose of decretal enforcement, from contractual modification.
However, ReMll relied on the full faith and credit that must constitutionally be accorded a decree of a sister State. (See, also, Nichols v. Nichols, 306 N. Y. 490, 498; Kullack v. Kullack, 1 A D 2d 1033; Klotz v. Klotz, 17 A D 2d 800; Temple v. Liebmann, 17 Misc 2d 740, 742, affd. 9 A D 2d 664, app. dsmd. 7 N Y 2d 1049.) Further, Nichols (supra) indicated that the Nevada decree’s approval, by incorporation, of the separation agreement may have been based on Nevada’s consideration of its substance (306 N. Y. 490, 499). By contrast, our courts have indicated a realistic appreciation of the pro forma nature of Mexican decretal approval of an incorporated separation agreement. (See Calwil v. Calwil, 34 A D 2d 535; Behrens v. Behrens, 72 Misc 2d 70, 72; Santamaria v. Santamaria, 74 Misc 2d 657; cf. Flood v. Thiesing, 273 App. Div. 548, affd. 298 N. Y. 700 [Nevada decree].) Thus, the Rehill-Nichols principle does not compel the conclusion that the instant Mexican decree must be deemed to incorporate the agreement as it existed at the time of the decree, rather than its modification.
Persuasive that the modified agreement should be given decretal enforcement, are the basic principles as to decrees for alimony that incorporate agreements. The reason that the agreed-decreed alimony is ordinarily unmodifiable is the public policy in favor of the private settlement of controversies (Galusha v. Galusha, 116 N. Y. ,635, 646), and in favor of honoring “ a mutual act of the parties based upon mutual intention.” (Schmelzel v. Schmelzel, 287 N. Y. 21, 26; see, also, Smith v. Smith, 43 A D 2d 784.) Obviously it would defeat these policies to hold that petitioner could via the decree enforce the original agreement despite solemn modification of it. Such a result would be inequitable since both parties intended that their contracts, rather than judicial decision, fix support. Under this court’s equitable power to modify decrees as fairness requires,
*768 it will therefore treat the decree as modified by the modified agreement. (See similar result in Hoops v. Hoops, 292 N. Y. 428.)
3. Modification Because of Changed Circumstances.
The question is then presented of whether the decree, deemed to embody the provisions of the modified agreement, should be further modified because of changed circumstances since the date of that agreement. In order to determine this question under the differing principles for alimony and child support, it is necessary to consider what part of the combined monthly payment for petitioner and child should be attributed to each. Taking that portion of the monthly $833.33 that petitioner would receive in case of the child’s death as the amount allocable to her, her alimony under the modified agreement and decree is $433.33 a month.
Respondent argues that petitioner is not entitled to this or any alimony at present because .she has become employed since the time of the agreement. He urges that a wife’s ability to work is a consideration in decreeing alimony under section 236 of the Domestic Relations Law, and he argues that the section 236 standards should be followed herein instead of the rule tying decreed alimony to the amount provided in an incorporated separation agreement.
In Brown v. Brown (71 Misc 2d 11), this court suggested that the recent New York legislation providing for conversion divorces might well stimulate a change in the common law in the direction urged by respondent. While research discloses no appellate opinion explicitly addressed to this issue, two brief Per Guriams indicate the possibility of such a change. (See Margolis v. Margolis, 35 A D 2d 817; consider Donneson v. Donneson, 43 A D 2d 553, affg. 76 Misc 2d 520.) In any event, however, the appellate courts clearly continue to adhere to .the view that the preseparation standard of living is to be enforced if the marriage had any substantiality. (McCracken v. McCracken, 44 A D 2d 793; see Brown v. Brown, 71 Misc 2d 11, 16, supra.) From this standpoint petitioner is entitled despite her earnings to the agreed-decreed alimony. And, respondent’s means are such that there is no warrant under the doctrine of Goldman v. Goldman (282 N. Y. 296) for a decrease.
While the child is not bound by the separation agreement and a change of circumstances may warrant a change in his decreed support (Family Ct. Act, ¡§ 461, subd. [b], par. [ii]), no evidence has been presented as to his past or present needs. *769 Accordingly, there is no basis for a change in the agreed-decreed amount allocable to him. (See, for similar result, Comstock v. Morray, 45 A D 2d 810, 811.)
4. Counsel Fee.
Kann v. Kann (38 A D 2d 545) and Winter v. Winter (39 A D 2d 69, affd. 31 N Y 2d 983) mandate caution as to an award of a counsel fee to a petitioner, who like the instant one, has the means to pay a fee. However, these holdings may not he controlling here where child support as well as alimony is in issue. (But, see, Chayet v. Chayet, 44 A D 2d 580.) Further, it appears from Mumford v. Mumford (44 A D 2d 817) that deviation from the Kann-Winter doctrine occurs.
Respondent’s attorney opposes petitioner’s application for a counsel fee in part on .the basis that respondent was contractually obligated since 19,63 .to pay the amount of support herein ordered; however, he fails to refute petitioner’s assertion that respondent was only paying $430 monthly support until the commencement of this action. Under all the circumstances a counsel fee award of $900 seems reasonable and is herewith ordered.