LINDA STERN, Respondent, v MICHAEL STERN, Appellant.

First Department, April 12, 1979

## APPEARANCES OF COUNSEL

*Harry Shapiro* of counsel *(Smith & Panish,* attorneys), for appellant.

*Angelo T. Cometa (Sheila Ginsberg* with him on the brief; *Phillips, Nizer, Benjamin, Krim & Balon,* attorneys), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

The only issue in this proceeding in which the wife has obtained a judgment of divorce is the allowance to her counsel of a fee in the sum of $30,000 and disbursements of $7,500. We find the award to have been proper and, accordingly, would affirm.

As the dissent notes, there is no disagreement among us that the valuation placed on counsel's services and disbursements by Special Term was fair and reasonable. But, unlike the dissent, we find the husband's conduct to be so clearly obstructionistic as to warrant affirmance of the order, without remanding for an evidentiary hearing. The husband's obstinacy throughout the pendency of this proceeding compelled his wife to deplete by at least 60% a stock portfolio of over $100,000. It would be unjust to have her, in effect, extinguish that portfolio to pay counsel fees incurred in reaching a settlement which might just as easily have been attained much earlier, but for, what appears to be, in retrospect, a lack of good faith by the husband.

The husband is financially quite secure while the wife has no outside employment and takes care of the couple's two children, ages 8 and 10. He initially offered his wife $200 weekly for three years, equal division of the marital property, and reimbursement of necessaries for the children only. During the course of the trial a settlement was reached at markedly higher terms, including $15,000 alimony and $25,-000 child support, $35,000 for necessaries, title to the marital home, and net proceeds of any sale of the home up to $100,-

000. Special Term noted that the husband caused the wife's counsel fees to escalate on several occasions when he refused to make full financial disclosure, thus compelling her to make a motion to take the husband's examination before trial; when he applied for a change of venue which was denied, and appealed the order to the Appellate Division, which affirmed Special Term's order; when he sought and was denied a protective order; when he sought another protective order in Westchester County Family Court, which application he withdrew after the wife moved to dismiss; when he twice changed attorneys (the second change to engage his original attorneys); when he refused to accept voluntarily an amended complaint, after initially indicating that he would, and the wife had to move for permission to amend her complaint; when she had to move for injunctive relief after the husband removed property from the marital home; and when she had to move to punish him for contempt after, in defiance of the injunction, he broke into the home a second time.

The husband sought a stay of trial and an extension of time to answer the amended complaint but the court summarily denied that motion from the bench. He also made a jury demand which resulted in time spent—at least an entire day —on jury selection, and then waived the jury; and withdrew his answer and counterclaim during trial, after hearing the testimony of four witnesses in support of the wife's claim of cruel and inhuman treatment, only to seek to reinstate both the next day.

It seems clear that if the husband had been as interested in proceeding to trial as he was in forestalling it, the wife would not have had to reach as deeply into her portfolio as she did to pay living expenses for herself and her children, and her bill for counsel fees would certainly not be as substantial as it is today.

In awarding counsel fees, Special Term relied, in part, on subdivision (a) of section 237 of the Domestic Relations Law which permits the court, in a divorce proceeding, to direct the husband "to pay such sum or sums of money to enable the wife to carry on or defend the action or proceeding as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties." In *Salk v Salk* (57 AD2d 519) this court, although reversing an award of counsel fees, noted that "[i]n awarding a counsel fee the merits of the action are among the factors to be considered"

(citing *Wood v Wood,* 21 AD2d 627, 630). Although this court stated in *Kann v Kann* (38 AD2d 545) that if a wife is "able to pay for her own counsel, no award may be made" that decision should not be viewed as permitting a husband to drive a wife to the brink of indigency by needless, time-wasting legal maneuvering, and then raising her predivorce solvency as a defense to a claim for counsel fees.

In *Kann,* the court dealt with a total initial award for counsel fees of $3,500, a fee considerably smaller than the one at issue in this case. In a subsequent decision, *Hyman v Hyman* (56 AD2d 337, 338), this court affirmed an award of counsel fees to a working wife because "[i]t is apparent * * * that respondent on her income is unable to pay a counsel fee without severely reducing her life savings." Special Term found that at the time of trial, the wife's stock portfolio had been reduced to approximately $35,000. The award of counsel fees and disbursements was $37,500. While the wife was also awarded $35,000 as compensation for moneys expended on necessaries and it may be that she has access to other limited resources, the effect of denying her counsel fees would be a substantial erosion of any financial wherewithal which she might otherwise have. In addition, it should be noted that the wife has already paid a $15,000 retainer to her attorney, so that it cannot be said that she will have escaped the litigation without herself incurring substantial expenditures. Finally, the fact that a wife has some money of her own is not an automatic bar to an award of counsel fees *(Anonymous v Anonymous,* 57 AD2d 938, 939), but is only a factor to be taken into consideration with all others, "including the defendant's financial position." *(Walker v Walker,* 18 AD2d 684.)* In view of all the circumstances, including defendant's sound financial position, the depletion of plaintiff's portfolio, and the fact that after a long period of legal stonewalling and obstructionistic tactics a settlement highly favorable to plaintiff and reflective of the *bona fides* of her cause was reached, the order appealed from should not be disturbed.

Accordingly, the order, Supreme Court, New York County (F. Shea, J.), entered October 28, 1978, granting plaintiff's motion for counsel fees and other expenses incident to the litigation, should be affirmed, without costs or disbursements.

Bloom, J. (dissenting). Plaintiff sued for a divorce, recovery of moneys expended for necessaries for herself and the two children of the marriage and to impose a constructive trust in

her favor over the matrimonial home, a house located in Scarsdale, New York. After 14 days of trial, a separation agreement was entered into under the terms of which plaintiff was granted $15,000 a year in alimony and $25,000 in child support. Additionally, she was paid $35,000 to compensate her for moneys expended for necessaries and title to the marital home was conveyed to her subject to the limitation that in the event the home was sold, defendant was to receive so much of the proceeds as exceeded $100,000 after deduction of all sales expenses. The separation agreement further provided that counsel fee to be awarded to plaintiff's attorneys was to be left for determination by the court.

Upon the entry into the agreement, defendant withdrew his answer and a judgment of divorce was granted to the plaintiff incorporating the provisions of the separation agreement. Thereupon plaintiff moved for an award of counsel fee in the amount of $101,091.25 plus an additional sum of $14,937.75 for disbursements claimed to have been expended for expert and other services. The application was presented and determined solely on papers. These disclosed, among other things, that plaintiff had entered into a retainer agreement with her attorneys pursuant to which she paid them the sum of $15,000.

The trial court found the reasonable value of the services rendered in connection with the divorce litigation to be $40,000. She allocated $10,000 of the fee paid by plaintiff to counsel to that cause of action, leaving a balance of $30,000 which defendant was directed to pay, together with the sum of $7,500 for other disbursements.

We are all of the opinion that the valuation placed by the trial court on the services rendered, as well as the amount fixed for other disbursements, including the necessary experts, was fair and reasonable. We are also in agreement that the defendant's litigiousness contributed, in part, to the plaintiff's need for legal services. However, we differ from the majority and, perforce, the trial court, in three respects.

First, the retainer agreement has never been submitted to the court. Thus, it cannot be determined whether the obligation to pay was undertaken by plaintiff or her father, and whether the undertaking was contingent, at least in part, or absolute. This information is critical to a proper disposition.

Secondly, there has been no allocation of any portion of the fee to the monetary benefit conferred upon the children of the

marriage. Of the $40,000 payable annually under the decree for alimony and child support, $25,000 or ⅝ of the total is for child support. The obligation of the parent for child support is one of the cornerstones of our law. To the extent that legal services are made necessary to achieve that objective, the law may require the parent responsible therefor to pay for such services (*Matter of Chayet v Chayet,* 44 AD2d 580; *Matter of Carole K. v Arnold K.,* 87 Misc 2d 547; *Matter of Juliette S. v William S.,* 79 Misc 2d 765). Whether the settlement negotiations which preceded the trial made provision for adequate support of the children is unknown to us, as presumptively, it was to the trial court. Hence, we cannot determine the amount of the fee apportionable to the children's recovery. This, in turn, frustrates our capacity to fix the amount of the counsel fee award chargeable to defendant.

Finally, there remains the question of the capacity of the plaintiff to pay for the services rendered. In *Kann v Kann* (38 AD2d 545), and kindred cases, we have pointed out that the purpose of the award of counsel fee in matrimonial actions is to insure representation to a wife who otherwise might not be able to afford an attorney. However, in balancing the elements involved in determining whether counsel fee is to be awarded and the amount thereof, we have made plain that due consideration is to be given to "the relevant needs and circumstances of the parties" (*Blauner v Blauner,* 60 AD2d 215, 218). Here, the trial court reported a diminution in the stockholdings of plaintiff of somewhat more than $70,000. While part of this sum may be explained away by the expenditures of plaintiff for necessaries, the disposition of this claim for $35,-000 still leaves a substantial gap.

An evidentiary hearing is necessary to establish the facts. Accordingly, I would reverse and remand for further proceedings not inconsistent herewith.

KUPFERMAN J. P., and SANDLER, J., concur with SULLIVAN, J.; LANE and BLOOM, JJ., dissent in an opinion by BLOOM, J.

Order, Supreme Court, New York County, entered on October 23, 1978, affirmed, without costs and without disbursements.