■ FRANCOISE DAVIS, Appellant-Respondent, v JOSEPH E. DAVIS, Respondent-Appellant.—Judgment, Supreme Court, New York County (Beatrice Shainswit, J.), entered March 27, 1986, which ordered a distribution of marital property providing, *inter alia*, that plaintiff-appellant Francoise Davis pay defendant-respondent Joseph E. Davis $125,000 as his share of

the value of the former marital cooperative apartment held solely in the name of plaintiff and $5,200 as his share of the value of a studio apartment in Versailles, France, with defendant transferring his interest in the studio apartment to plaintiff; directed that defendant pay plaintiff $50,000 as her share of the value of the Warwick, New York, vacation home, with plaintiff transferring her interest in the home to defendant; directed that defendant shall retain his one-half interest in two properties located in the Bahamas, with plaintiff entitled to one half of her share of the net proceeds in the event defendant sells such properties; denied plaintiff any share of the value of defendant's leasehold interest in apartment 32H, his cooperative apartment, or his professional corporation; granted defendant's motion for a downward modification of child support to the extent of reducing his obligation for the payment of child support to $75 per week plus 75% of private school tuition, retroactive to October 11, 1984, the date of the submission of such motion; and awarded counsel fees of $15,000 to plaintiff, modified, on the law and the facts, and in the exercise of discretion, the fourteenth decretal paragraph of the judgment vacated, and, in lieu thereof, defendant is directed to pay plaintiff $10,250 representing her equitable interest in the Bahamian properties within 20 days of service upon him of a copy of the order entered herewith and the seventeenth and eighteenth decretal paragraphs are modified to increase the award of child support from $75 to $150 per week, and, as modified, otherwise affirmed, without costs.

In 1965, the plaintiff was 21 years old. A French native, she interrupted her college education in France to come to New York to marry the defendant, Joseph Davis. Defendant was then 34 years old, a urologist with a five-year-old private practice in New York City. In 1967, they moved into an eighth-floor apartment in the building located at 320 West End Avenue, which they occupied pursuant to a professional lease in defendant's name. The wife taught French part time on an intermittent basis until the birth of their son, Jan-Phillippe, in 1969. On July 12, 1976, the parties agreed to separate when the wife told the husband that she had met a general contractor, with whom she wished to have a relationship, and the husband in turn told her that he was having an affair with his secretary.

In 1981, the wife commenced this action for divorce on the ground of cruel and inhuman treatment. The delay in commencing the action resulted in large measure from litigation commenced against the husband by his first wife, who, in

1977, seized his interest in the Warwick, New York, vacation home to satisfy a judgment for child support arrearages. Settlement negotiations between plaintiff and defendant to dissolve their marriage apparently faltered over the issue of the disposition of the marital apartment, which had undergone cooperative conversion in 1977 and had thereafter enjoyed a tremendous appreciation in value. On October 28, 1982, Justice Hortense Gabel granted the wife pendente lite maintenance of $150 per week and child support for Jan-Phillippe of $250 per week. The wife was thereafter compelled to seek enforcement of the pendente lite order. She was successful and a cross motion by the husband for downward modification of his support obligations was denied. A second motion by the husband for the same relief was referred to the trial court. The trial was held before Justice Shainswit on May 30, June 21 and June 24, 1985. On May 31, 1985, the court granted a joint divorce and awarded custody of Jan-Phillippe, then aged 16, to the wife and required that she consult the husband on all major decisions concerning the child. The wife waived any claim for permanent maintenance. The issues at trial and on this appeal concern equitable distribution of a vacation home and adjoining land in Warwick, New York, the former marital apartment, a studio apartment in Versailles, France, half interests in two parcels of property in the Bahamas and the husband's professional practice, the husband's pension and Keogh plans, his former leasehold interest in apartment 32H and his cooperative apartment 36J, both in the building located at One Lincoln Plaza, and child support. Only two substantial assets of the parties are not in dispute—a cello purchased by the husband for the wife, which is to be sold and the net proceeds divided equally, and the husband's share in the estate of his mother, who died in 1984, worth approximately $235,000, which is his separate property.

As found by the trial court, the evidence at trial established, in addition to the foregoing, the following facts with respect to each item of property and the income of the parties. The items of property and the income of the parties are discussed, seriatim.

## West End Avenue Apartment

On July 7, 1977, almost one year after the parties had separated, the wife purchased the marital apartment for $12,000 under an eviction cooperative conversion plan. She

made the $3,000 down payment and, at her request, the husband cosigned and guaranteed a purchase-money mortgage for $9,000. According to the husband, title was taken solely in plaintiff's name in order to shield it during the ongoing litigation with his first wife. In 1978, the plaintiff's paramour moved in with plaintiff and thereafter assisted her in making certain improvements in the apartment which allegedly were worth between $100,000 and $125,000. However, plaintiff only produced bills and receipts for expenses, aside from those for painting, totaling approximately $7,000. Based on a 1984 appraisal, the parties stipulated that the fair market value of the apartment was $375,000.

## Warwick, New York, Vacation Home

In 1969, the parties purchased a vacation home and adjoining acreage in both their names for $40,000, of which $12,500 is outstanding on the mortgage. Since 1979, the husband and his secretary have visited the property regularly. The wife has no interest in using it. The husband borrowed $40,000 to repair the premises, of which $15,000 is outstanding. He testified that additional work costing $15,000 is necessary. In 1984, the property was appraised for $75,000, and the husband carries insurance of $120,000 on it.

## Foreign Realty

In 1969, the husband also purchased one-half interests in two parcels of real property in the Bahamas, for approximately $20,500. There is apparently no market for the property. Subsequently, he bought a studio apartment in Versailles, France, for $5,200 for his wife, whose parents reside nearby in Paris. The apartment is now being rented. French law prohibits removal from France of either the rental income or the sales proceeds of the apartment.

## Income

As to income, the wife's paramour apparently supports her in the style to which she had become accustomed. The husband receives his income from his professional corporation, which employs a secretary, another physician, and a nurse. In 1966, he established a Keogh retirement plan and, in 1971, he established a joint pension plan for himself and the other employees of the professional corporation. Defendant testified

that he had a vested 80% interest in the pension plan and, when this action was commenced, his account had a balance of $20,000. Defendant asserted, however, that by the time of trial the plan contained $60,000 to $70,000, but that he had borrowed approximately $32,000 against it. He testified that his income between March 1984 and March 1985 was $235,000, but claimed that his income had declined sharply since the summer of 1984 as a result of changes in Medicare regulations and his loss of a position on a hospital staff. He further indicated that since then he has borrowed in excess of $45,000, not including loans from his sister, the executrix of the estate of their deceased mother, the $20,000 taken from his pension plan, and credit card debt. His alimony obligations to his first wife total in excess of $9,700 annually in addition to a lump-sum payment of $12,000 which was due in October 1985. The husband allegedly contemplates future employment in the public sector, at an annual salary of $80,000, which he claims to be what he actually earned in 1984.

Trial Term excluded evidence offered by the wife seeking to demonstrate that the actual income of the husband exceeded that reported on his personal and corporate tax returns. Plaintiff then did not offer expert testimony which she had planned to present to establish the value of the professional corporation based upon the excess earnings method, asserting that the court had precluded her from laying the proper foundation. *(See, Nehorayoff v Nehorayoff,* 108 Misc 2d 311 [Sup Ct, Nassau County 1981].)

In its decision, Trial Term quoted the guidelines set forth in section 236 (B) (5) of the Domestic Relations Law (Equitable Distribution Law) and indicated that it had considered all of the statutory factors in its findings of fact and conclusions of law. Without stating reasons or discussing how the general principles applied to the facts, the court distributed the marital property as follows: (1) the husband's share of the former marital apartment was $125,000, to be paid by the wife who would retain title solely in her name; (2) the wife's interest in the Warwick, New York, vacation home (precise value of which was not fixed) was $50,000, to be paid by the husband, with the wife transferring her interest in the home to the husband; (3) the wife was to have sole ownership of the studio apartment in Versailles, France, with the purchase price to be paid to the husband, and the husband transferring his interest to the wife; and (4) in the event the husband sold his interest

in the properties in the Bahamas, the wife was entitled to one half of his share of the net proceeds.

The court further found that the wife was "obviously" able to contribute substantial sums to Jan-Phillippe's support. Reasoning that the life-style the child would have enjoyed had the marriage continued was irrelevant, and that his present life-style consisted of more than necessaries, Trial Term granted the husband's pretrial motion for a downward modification of child support, retroactive to the date that the motion was submitted. The court eliminated the maintenance payments to plaintiff of $150 per week, on her consent, and reduced the child support payments from $250 to $75 per week.

Part (B) (5) (g) of section 236 of the Domestic Relations Law mandates that the court "set forth the factors it considered and the reasons for its decision". Although Trial Term failed to resolve all of the disputed issues expressly, the present case need not be remanded and we need not make additional findings of fact. The key factual issues were sufficiently clear that the basis for Trial Term's decision can be readily inferred from the conclusions reached (cf., Capasso v Capasso, 119 AD2d 268, 273 [1st Dept 1986]) and the record otherwise reveals sufficient evidence to afford adequate appellate review. (Sementilli v Sementilli, 102 AD2d 78, 86 [1st Dept 1984].)

We can infer that the trial court found that the wife failed to sustain her burden of proving that the husband's professional corporation, pension, and Keogh plans qualified as marital property, or of sufficiently proving the value of these assets. We cannot agree with the wife's contention that the trial court committed reversible error in precluding proof that the husband's actual income exceeded that reported on his personal and corporate tax returns and in failing to make a distributive award as to the professional corporation. Assuming, arguendo, that the wife was entitled to adduce such evidence, on the theory that the husband's expenses were overstated, without the wife having actually examined the books and records of the professional corporation (see, Bidwell v Bidwell, 122 AD2d 364, 366 [3d Dept 1986]), a remand for additional proceedings is not warranted. This ruling did not foreclose the wife from establishing the value of the professional corporation. She could have proceeded on an alternate method of valuation, such as the capitalization of earnings approach (Bidwell v Bidwell, supra), or on the theory, now advanced on this appeal, that the income stated on the tax

returns established annual excess net earnings of $58,000. *(Michalek v Michalek,* 114 AD2d 655 [3d Dept 1985].) The latter theory, not having been raised below, was waived. Further, this court cannot adopt a new valuation theory on appeal. Aside from the lack of evidence proving the value of the husband's medical practice *(Arvantides v Arvantides,* 64 NY2d 1033 [1985]), it would seem to qualify as his separate property because it was commenced five years before the marriage. More significantly, the wife did not demonstrate that her services as a homemaker and a parent indirectly contributed to the success of the practice. *(Price v Price,* 113 AD2d 299, 304 [2d Dept 1985]; *cf., Wegman v Wegman,* 123 AD2d 220, 237 [2d Dept 1986].)

Plaintiff similarly failed to sustain her burden of proving the value of the husband's vested interest, i.e., the discounted value of moneys presently available, in the professional corporation's retirement plan and of his interest in the Keogh plan. The husband's testimony that he had an 80% interest in the pension plan was insufficient to prove the wife's entitlement to a specific portion of any balance he claimed was in his account. *(Bidwell v Bidwell, supra; Michalek v Michalek, supra,* at 657.) The only evidence in the record as to the value of the Keogh plan was the husband's 1984 statement of net worth which indicated an estimated fair market value of $14,000.

We can also infer that the trial court properly concluded that apartment 32H at One Lincoln Plaza, rather than being worth the $75,000 credit given to the husband when he purchased apartment 36J under the cooperative conversion plan, had no value since it was a leasehold in 1981 when the action was commenced. Nor was the wife entitled to one third of the value of the $75,000 credit. The apartment at One Lincoln Plaza and the former marital apartment are not comparable. As discussed, *infra,* the equities favored award of a one-third interest in the former marital apartment to the husband. In contrast, the wife never lived at One Lincoln Plaza, never paid any rent, and did not assist in the husband's purchase. Further, we can fairly ascertain that the trial court deemed apartment 36J to be separate property of the husband because the down payment came from a loan on his inheritance, itself separate property.

Thus, except for the two parcels of property in the Bahamas, which we conclude should have been treated differently, we find no basis for disturbing the judgment of the trial court

with respect to the distribution of marital assets. Not surprisingly, the main thrust of the plaintiff's appeal seeks to reduce or entirely eliminate the husband's interest in the West End Avenue apartment. The equities favored the award of an approximately one-third interest in that apartment to the husband, particularly in relation to the award to the wife of an approximately 50% interest in the Warwick vacation home. The wife made no contribution whatsoever towards the latter. Yet, her opportunity to purchase the West Side apartment for $12,000 derived from the lease entered into by the husband, his payment, from the income of his medical practice, of the rent over the preceding nine years, and his assistance in the actual purchase. Indeed, the husband remains liable for the balance of the loan secured by the purchase-money mortgage which he guaranteed. Additionally, his support payments were a substantial source of the income which enabled plaintiff to make the down payment and monthly maintenance payments. The great difference in value between the vacation home and the West Side apartment represents a windfall due purely to market conditions, which appreciation, the husband should, in fairness, be permitted to share. (Wegman v Wegman, supra, at 231-236.) The trial court apparently considered Jan-Phillippe's near maturity and the infrequency of his residence in the marital apartment and determined that, although the wife had no liquid assets to pay the amounts due under the judgment and waived permanent maintenance, her need for sole ownership of the marital apartment was not an overriding factor.

It was also reasonable to permit the wife to have sole ownership of the studio in France since she, at least, can enjoy the income twice each year when she visits her family. In the absence of any evidence other than the original purchase price and based on the assumption that the studio has appreciated in value, the trial court's determination to award payment of the full original purchase price to the husband was fair.

Comparison of how the parties fared in the equitable distribution, under the judgment, reveals that the wife received approximately $260,000, while the husband received approximately $199,000. We calculate the wife's share of the judgment as follows: $5,000 for the cello; $50,000 for the country home; $250,000 for the West End Avenue cooperative apartment; $5,200 for the studio apartment in France; the half interest in proceeds from any future sale of the Bahamian properties (no worth under the judgment as now formulated).

The husband received $5,000 for the cello; approximately $43,000 for the country home; $125,000 for the West End Avenue cooperative apartment; $5,200 payment for the French studio apartment; and $20,500 for the right to keep his interests in the Bahamian properties until he chooses to sell them. With one exception, this division seems equitable given that the husband had an established medical practice at the time of the marriage and provided the lion's share of the marital income until the commencement of this action.

We agree with the wife that fair treatment of the foreign realty requires the husband to pay her one half of the original purchase price for his one-half interests in the Bahamian properties, $10,500. In tailoring the disposition of both the French studio apartment and the Bahamian properties, the trial court implicitly recognized that a forced sale and sharing of the net proceeds was not feasible. However, the court awarded the husband the full purchase price of the former, while granting the wife only a future right to share in the net proceeds in the event the husband sells the latter. Directing the husband to share the net proceeds in the event of a sale would unfairly permit him to defeat the wife's interest in the Bahamian properties if he failed to sell them for an indefinite period of time.

Trial Term properly determined that July 12, 1976, the date of, what the wife termed, the "irretrievable breakdown of the marital partnership", was irrelevant either for defining or valuing marital property under the Equitable Distribution Law. Such a concept violates the explicit language of section 236 (B) (1) (c), which defines marital property as "all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held". *Wegman v Wegman* (129 Misc 2d 968 [Sup Ct, Nassau County 1985]), the sole case relied upon by the wife in support of the contention respecting valuation, was reversed in pertinent part in the well-reasoned opinion of Justice Brown writing for a unanimous court in *Wegman v Wegman* (123 AD2d 220, *modfg* 129 Misc 2d 968, *supra*). We need not consider the wife's belated argument that the trial court should have chosen the date of the commencement of the action rather than the date of trial as the more appropriate date for valuation of the former marital residence. The wife did not present any evidence of fair market value in 1981 and, indeed, stipulated to the value as of the time of trial,

based upon a 1984 appraisal, presumably with the intent that such figure be utilized for distribution purposes.

The contention of the wife that the husband should be equitably estopped from obtaining any interest in the West End Avenue cooperative apartment lacks evidentiary support. The trial court implicitly discredited the testimony of the wife, the wife's paramour, and the wife's neighbor that the husband had, in 1976-1977, expressly disavowed any intention to purchase the West End Avenue apartment. More significantly, the wife's decision to purchase the apartment was apparently attributable, not to her reliance upon assurances by her husband, but to the eviction nature of the plan. Nor does the record support a modification of the award to reflect the improvements which the wife allegedly made in the apartment. The wife's paramour performed any work done, and the wife produced no documentation to establish any substantial expenses incurred or value obtained from the improvements.

We conclude further that the trial court erred in reducing the husband's child support obligation by $250 per month. While the expenses claimed by the wife were somewhat inflated, particularly given Jan-Phillippe's residence in the home for approximately nine weeks out of the year, the trial court clearly failed to consider the life-style which the child would have enjoyed had the marriage continued. *(See,* Domestic Relations Law § 236 [B] [7] [a] [3].) Moreover, the record evidences that while the wife enjoys a high standard of living thanks to her paramour, contrary to the trial court's conclusion, she continues to have little or no income to contribute towards the support of her teen-aged son. In view of the foregoing factors and the husband's financial resources, we believe that the child support payments should be increased to $150 per week, retroactive to October 11, 1984.

The husband cross-appeals from so much of the judgment which awarded the wife $15,000 in counsel fees, contending that her receipt of assets worth, as he calculated, over $300,000 disqualified her for an award of counsel fees. *(See, Ackerman v Ackerman,* 96 AD2d 543 [2d Dept 1983]; *Kann v Kann,* 38 AD2d 545 [1st Dept 1971].)* Trial Term did not discuss this issue in its decision dated December 3, 1986, but clearly included the fee award in the subsequent judgment based upon the affidavit submitted by the wife's counsel, sworn to on February 11, 1987, concerning the value of his services. The award of counsel fees is appropriate because the fees were incurred as a consequence of motion practice for which the

husband was primarily responsible, including three repetitive motions related to temporary maintenance and support. *(See, Stern v Stern,* 67 AD2d 253, 256 [1st Dept 1979].) The trial court properly determined that as the wife had minimal liquid assets with which to pay the husband the net amount owed under the judgment, she should not be compelled to sell her residence to pay her attorneys. Concur—Kupferman, J. P., Ross, Kassal, Rosenberger and Ellerin, JJ.