(July 9, 1987)

■ PIERRE CLERK, Respondent, v LILA CLERK, Appellant.— Judgment, Supreme Court, New York County (Burton S. Sherman, J.), entered July 23, 1986, which ordered, following trial, the dissolution of the marriage between plaintiff-respondent and defendant-appellant, and which awarded to respondent the New York City loft cooperative apartment which had been the marital residence, as well as certain real property located in Rhode Island, and awarded to appellant the sum of $120,292, payable when the appellant vacated the marital

residence, unanimously modified, on the law and facts and in the exercise of discretion, to award appellant the Rhode Island property upon repayment of $120,292 to respondent, and otherwise affirmed, without costs.

The parties were married in 1968, after having lived together since 1964. They separated in 1977 but did not enter into a separation agreement, although respondent husband, who resided elsewhere, continued to use the studio in the parties' loft apartment several days per week. This arrangement was eventually included in a Family Court stipulation executed in 1981. Respondent was 57 years old at the time of the trial and had been an artist for 35 years. Appellant, then 50 years old, was employed as a secretary at Rockefeller University, but also pursued a career as an artist on a part-time basis. Respondent has one child from a previous marriage; however, there were no children born of this union.

The marital property was found to consist of a cooperative loft apartment in the Soho section of Manhattan which was used as both marital residence and as respondent's studio, a house on Block Island, Rhode Island, and a substantial inventory of artworks produced by both parties. Expert testimony was offered to establish the value of the real property. The Soho loft was appraised as having a value of $390,000, and the Rhode Island home and land around it were appraised at $185,000. These appraisals were accepted by the court and are not now challenged on appeal. However, the testimony of appellant's expert witness as to the value of the parties' artworks was rejected by the court and appellant now challenges the court's assessment of their worth as well as the decision to award her only 20% of the marital property.

At trial, appellant's expert witness, a dealer in American and European contemporary art, placed a value of $703,560 on the more than 2,000 paintings, tapestries, prints and sculptures produced by respondent. He assigned a value of $48,200 to appellant's artworks in the parties' inventory. Although the court accepted this witness' expert qualifications, it rejected his testimony regarding the value of the collection. Despite the fact respondent had reserved the right to call an expert witness to rebut appellant's appraiser, he did not do so. He was also unable, when directly asked by the court, to place a market value on the work he had produced because there were no ready buyers. Respondent maintained that many, but not all, of the works were old and damaged and could not be resold although he conceded that some of the works were good and did have some value. The court determined that the

frames on the paintings and prints had a value of $15,960. A distress sale value of $23,000, "or three times the cost of the frames less agents' commissions of 50%", was assigned not only to the paintings and prints in the frames, but to the sculptures and other work as well, giving a total present value of $38,960 for all of respondent's work.

While the court was not required to accept the testimony of appellant's expert witness (*Desnoes v State of New York*, 100 AD2d 712, 713 [3d Dept 1984]), we must agree with appellant that the court's valuation of the art inventory was arbitrary and unsupported by the record. Appellant's expert testified that only 58 pieces in the inventory were framed and that he had contacted framers and manufacturers in the metropolitan area to ascertain the cost of these frames. The average price was $70 to $72, or a maximum value for all 58 frames of $4,176. Respondent did not challenge this assessment which, unlike that for the works of art in the frames, was readily verifiable. We therefore reject the court's finding that the frames had a value of almost four times their average price. Nor can we find justification for the value assigned to all of respondent's artwork as a multiple of the value of the frames.

The court below also erred in evaluating appellant's nonremunerated contributions to the marriage and to the appreciation of marital property. Contrary to Domestic Relations Law § 236, the court, using the 1977 separation as the terminal date, found that appellant had contributed to respondent's 35-year career as an artist for only 7 or 8 years. However, the parties were married for nine years prior to their separation in 1977. No separation agreement was executed at that time and they did not enter into the Family Court stipulation until 1981. This action was commenced in 1982. Thus, appellant should have been credited with a minimum of 13 years, from the date of the marriage until the execution of the Family Court stipulation, for increases in the marital assets, including works produced by respondent.

Moreover, the court did not give adequate consideration to appellant's contributions as a homemaker and helpmate to respondent during this 13-year period (*Price v Price*, 69 NY2d 8 [1986]; *Capasso v Capasso*, 119 AD2d 268, 274-275 [1st Dept 1986]). In addition to maintaining the home and furnishing other spousal services, there was also evidence that appellant directly contributed to respondent's career as an artist by performing clerical services and working as a studio assistant and, on some occasions, as an agent for respondent. While, on the one hand, the court acknowledged these contributions, it

characterized them as minimal and inconsequential in furthering respondent's career.

During this 13-year period there was also considerable appreciation to the Rhode Island property which was purchased for $4,000 in 1967 and the Soho loft which was purchased for $25,000 in 1972. While it is true that much of that appreciation was due to work by respondent, who had a construction contracting business to supplement his income as an artist, there was evidence that appellant also contributed her manual labor in renovating and improving the Rhode Island property.

Given the record before us, and keeping in mind that appellant was not awarded any maintenance, we find that the court erred in awarding appellant only 20% of the marital assets. Considering the duration of the marriage, appellant's loss of inheritance rights, and the obvious difficulty in evaluating the artworks which are marital property, we find that equity requires that appellant be given a more substantial share of the marital property which is certain of valuation— i.e., the realty. (Domestic Relations Law § 236 [B] [5] [d].) We therefore find it appropriate to award appellant the Rhode Island property, which has a value equal to approximately 30% of the marital assets, in lieu of the $120,292 cash award granted by the court below (see, Davis v Davis, 128 AD2d 470 [1st Dept 1987]). Although appellant has already vacated the Soho loft and received payment of the $120,292, at oral argument before this court, appellant indicated that this solution would be preferable to having the matter remanded to the court below for further proceedings and that she would return the cash received, in exchange for the Rhode Island property. Concur—Murphy, P. J., Sandler, Sullivan, Rosenberger and Smith, JJ.