■ JERRY S. LISCHYNSKY, Appellant-Respondent, v OLA LISCHYNSKY, Respondent-Appellant.—Yesawich, Jr., J. Cross appeals from a judgment of the Supreme Court ordering equitable distribution of the parties' marital property, entered July 1, 1985 in Schenectady County, upon a decision of the court at Trial Term (White, J.), without a jury.

Married in February 1976, plaintiff instituted suit 4½ years later for divorce and equitable distribution. At trial, the parties entered into an oral stipulation resolving their financial differences and Trial Term granted a mutual divorce incorporating the stipulated property settlement into the judgment. On appeal, the decree of divorce was upheld, but the stipulation was deemed ineffective because it had not been executed in conformance with the mandate of Domestic Relations Law § 236 (B) (3); remittal for determination of all issues relating to maintenance and equitable distribution was directed (95 AD2d 111).

In March 1985, the matter was heard at a nonjury Trial Term of Supreme Court. At the time, the parties were 56 years of age, with emancipated children from prior marriages; plaintiff's health was apparently generally good while defendant allegedly suffered from back problems. Evidence adduced at trial disclosed that plaintiff purchased a printing business in 1959 which he incorporated in 1971 as Eric Hugo Printing, Inc. (Hugo Printing); he was sole owner of the corporation until 1979 when he gave his son, who worked with him, a 25% ownership interest. Beginning in the mid-1970s, Hugo Printing expanded rapidly. Gross sales rose steadily from $150,231.75 in 1976 to $655,578 in 1980.

The business was relocated in 1978 from a building at 959 State Street in the City of Schenectady to one located at 1085 Catalyn Street in the city. The State Street property, purchased by plaintiff in 1968, also housed income-generating apartments. Plaintiff, who himself had been in the real estate business, sold that building in 1980 for $22,000, receiving a $2,000 down payment and a mortgage for the balance. His 1978 acquisition of the Catalyn Street building involved no down payment. The deed ultimately named plaintiff and defendant grantees, as tenants by the entirety, and the $50,000 mortgage identified them as the mortgagors. The building was rented to the corporation for an amount equivalent to the monthly mortgage obligation. In addition, the corporation paid the taxes on the premises and the cost of repair work.

In May 1976, shortly after their marriage, the parties bought and resided at their jointly owned home on Rector Road in the Village of Scotia, Schenectady County. On the sale of these premises in 1980 for $78,000 the parties accepted a purchase-money second mortgage, on which payments were never made, for $44,000. At the time of trial, fire had destroyed this property and the parties had been paid over $30,000 in fire insurance proceeds.

With the sale of the Rector Road residence, the parties moved to a new home on 22 Santa Lane in the city. Plaintiff purchased this home in his own name for $53,500 in the fall of 1979. When defendant subsequently refused to consent to the sale of another piece of realty, one located at 1614 Wendell Avenue in the city, unless plaintiff named her on the deed to the Santa Lane marital home, he did so in March 1980, but instructed his attorney to denominate their ownership as tenants in common.

Title to the Wendell Avenue property named plaintiff and defendant as owners by the entirety. They purchased it in 1979 for $53,000 in cash. Sale of that property in March 1980 for $52,000 involved a $20,000 down payment by the buyer and a mortgage in the amount of $32,000 payable to plaintiff and defendant. The parties also invested in real property in St. Petersburg, Florida, in 1979. The rental income from this property, which was in their joint names, was not covering the cost of the mortgage, the balance of which at the time of trial was $17,000.

Trial Term found that defendant had no separate property and that plaintiff's separate property consisted of the following: certain personal property at the Santa Lane home, his

stock interest in Hugo Printing, the Catalyn Street real estate, and a home plaintiff owned at 950 Pearse Street in the city before marrying defendant. The court distributed the marital property in the following manner: it awarded plaintiff the St. Petersburg home, the note and mortgage covering the Rector Road premises, and approximately $5,200 of the insurance proceeds from the fire loss at Rector Road; defendant received $25,000 from the fire insurance proceeds, the Santa Lane home and the note and mortgage on the Wendell Avenue property. With respect to the question of maintenance, the court considered defendant's resources resulting from its distributive award sufficient to obviate the need for any such relief. Both parties appeal.

Plaintiff contends initially that defendant's failure to request any affirmative relief in her answer to the complaint forecloses distribution of any assets to her. This is an untenable argument for plaintiff himself specifically requested equitable distribution of the parties' marital assets in his complaint and even negotiated and entered into a stipulation apportioning the parties' property. Apart from that, this court remitted the case precisely for that determination to be made.

As for the merits, plaintiff asserts that Trial Term erroneously classified the Santa Lane, Wendell Avenue and Rector Road premises as marital property subject to equitable distribution. However, those three dwellings, because purchased during the parties' marriage, are presumed to be marital property (Domestic Relations Law § 236 [B] [1] [c]). It is also significant that title to each was shared by the parties (see, Parsons v Parsons, 101 AD2d 1017; cf. Alwell v Alwell, 98 AD2d 549, 552) and that they both were named mortgagees on the Rector Road and Wendell Avenue mortgages. Moreover, the funds used to acquire these properties came from the parties' respective bank accounts, funded primarily by paychecks from Hugo Printing. The contention that plaintiff's paychecks constituted separate property merits little attention for the wages were earned while married to defendant (see, Domestic Relations Law § 236 [B] [1] [c]). Nor has he traced with any particularity the deposits into the parties' various accounts which he attributes both to rental income from the apartments at his separate State Street property and to an inheritance of an unspecified amount (see, Nolan v Nolan, 107 AD2d 190, 194). This commingling of separate money in the parties' active bank accounts, coupled with the lack of proof identifying the portion thereof used to purchase the realty, justifies treating those accounts as marital property. Resorting

to those accounts to make down payments and mortgage payments on these three parcels of real property merely buttresses the court's categorization of them as marital property.

And, far from being grossly inequitable as plaintiff charges, we find Trial Term's distribution of the marital property to be eminently reasonable. It recognizes defendant's compelling financial need, plaintiff's own comfortable station in life with a successful income-producing business, and the high standard of living the parties experienced while married. Given defendant's obvious lack of resources, age, health and narrow employment potential—she has limited command of the English language—the award to her of a residence, an income property and the bulk of the fire insurance proceeds does not appear to be unduly favorable, but rather reflective of the individual needs and circumstances of the parties (see, Governor's memorandum, 1980 McKinney's Session Laws of NY, at 1863).

Plaintiff also takes issue with the fact that, in arriving at the distributive award, Trial Term noted that it considered defendant's previous requests for temporary maintenance, professional fees and household expenses. Domestic Relations Law § 236 (B) (5) (d) (10) expressly allows the court to weigh "any other factor which the court shall expressly find to be just and proper" to affect its equitable distribution decision. Though it is true that a spouse's right to temporary maintenance generally ceases upon the parties' divorce (Weaver v Weaver, 72 AD2d 221), the time and expense consumed by the further proceedings occasioned by remittal to Trial Term for resolution of the parties' financial differences was an exigent circumstance fairly taken into account by the court, along with the other expenses and obligations weighing on defendant, in attempting to effect equitable distribution of the parties' assets.

Turning to defendant's grievances, we find no error in Trial Term's refusal to award her a share in either the stock ownership of Hugo Printing or in its appreciation in value during the marriage. That defendant failed to make any direct contributions to the appreciation of the business is readily apparent from the record. Less clear, however, is the extent to which, if any, she has established that by performing household chores she contributed indirectly. Since each of the parties baldly claimed to have maintained the household, with the other contributing nothing, the issue is reduced to that of

assessing credibility; we find no reason to disturb Trial Term's appraisal of this issue.

Defendant's claim that the court mistakenly deemed the Catalyn Street building, which housed the corporation, to be plaintiff's separate property does, however, have substance. The parties acquired these premises in 1978 and held title jointly. As with the other real estate discussed above, the presumption thereby arose that the building was marital property (Domestic Relations Law § 236 [B] [1] [c]). Plaintiff's argument that this building merely replaced the corporation's former headquarters on State Street would be compelling if the Catalyn Street purchase had not preceded the State Street sale by two years. Moreover, no proceeds from the sale of the State Street property were used to pay for the Catalyn Street building. Instead, there was no down payment and the rental payments from Hugo Printing covered exactly the monthly payments due on the $50,000 mortgage. The Catalyn Street building should therefore, have been treated as marital property.

Plaintiff testified that, as of August 1980, the Catalyn Street property had an outstanding mortgage principal of $45,000, indicating that the parties had earned a $5,000 equity in the building by the time plaintiff initiated his divorce action. In the interests of judicial economy and ending this already protracted litigation, we give plaintiff the option of paying defendant one half of that equity, the amount of $2,500, with interest from August 1980 as an alternative to litigating the issue further on remittal.

Further proceedings are, however, necessary for Trial Term, in denying defendant a permanent maintenance award, neglected to discuss the 10 factors contained in Domestic Relations Law § 236 (B) (6) (a) and the record does not permit us to do so (see, e.g., Matter of Gulli v Gulli, 118 AD2d 970). We find it unnecessary to comment on the other points advanced by the parties.

Judgment modified, on the law and the facts, by reversing so much thereof as denied defendant maintenance and declared the real property located at 1085 Catalyn Street in the City of Schenectady to be plaintiff's separate property; matter remitted to Supreme Court for further proceedings not inconsistent herewith; and, as so modified, affirmed. Kane, J. P., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.