◼ THEODORA S. NEMIA, Appellant, v FRANK A. NEMIA, Respondent.—Yesawich, Jr., J.

The procedural history of this divorce action is adequately documented elsewhere (90 AD2d 871, revd 63 NY2d 855). It suffices to observe that the parties have been engaged in matrimonial litigation since 1978.

Stripped of generalities, plaintiff's disenchantment with Trial Term's decision comes to this: the maintenance award of $300 per month, to run from the date of the decision, August 1985, to June 1986, is inadequate and her request for counsel fees should not have been denied.

Regarding the claimed inadequacy of the maintenance award, Trial Term concludes, and the record confirms, that in addition to the marital assets awarded plaintiff—valued at over $100,000—she has over $300,000 in separate assets, and that these assets were generating approximately $10,000 to $12,000 a year for an unrealistic return of 3 to 4%. As Trial Term rightly observed, had plaintiff pursued even a modest investment course with these assets she would be capable of generating income approximately equal to her self-declared living expenses.

Given the measure of her financial resources and good health, we need not address whether, as Trial Term intimated, she has sufficient education (plaintiff has completed three years of college) and marketable skills (she has a real estate license and was completing a course in advanced office technology) to enable her to become personally productive. More-

over, it is not without significance that Trial Term directed the parties to submit to the court new financial statements on or before June 7, 1986 to enable it to reevaluate plaintiff's maintenance needs.

Insofar as defendant maintains that the judgment is "generous" and should be reduced, his failure to cross-appeal forecloses consideration of the merits of this argument (see, Day v Day, 112 AD2d 972, 973).

Nor can Trial Term be faulted for failing to honor plaintiff's request for counsel fees. Not only does she have the ability to satisfy those amounts, but it appears a portion thereof are the result of dilatory and nonproductive litigation tactics pursued on her behalf (cf. Schussler v Schussler, 109 AD2d 875).

Also unavailing is the belated point, made by plaintiff for the first time on appeal, that opposing counsel should be disqualified pursuant to Code of Professional Responsibility, DR 5-102. Legal arguments not raised or preserved by proper objections at the trial level are outside the scope of appellate review (Cameron v Andrukiewicz, 87 AD2d 734). But beyond that, plaintiff's claim simply lacks merit. Code of Professional Responsibility, DR 5-102, commonly referred to as the advocate-witness rule, "prohibits a lawyer from representing his client in pending litigation when he or a lawyer in his firm ought to be called as a witness on behalf of his client" (Ellis v County of Broome, 103 AD2d 861, 862). There is no reason to apply this rule in the instant case for its purposes "are not implicated when a lawyer is a litigant as well as a witness, but not an advocate, even though a member of his or her [law] firm is trial counsel * * * [because] [n]o confusion of role or undue enhancement of advocacy results where the lawyer-witness' lack of disinterestedness is evident from his or her status as a party-litigant" (Bottaro v Hatton Assoc., 680 F2d 895, 897 [emphasis supplied]; see, Emerald Green Homeowners' Assn. v Aaron, 90 AD2d 628). Under the circumstances, disqualification of defendant's counsel would constitute nothing more than an unwarranted intrusion upon defendant's right to enjoy the services of the attorney of his choice.

Judgment affirmed, with costs. Kane, J. P., Main, Casey, Mikoll and Yesawich, Jr., JJ., concur.