■ CAROLYN SARAFIAN, Respondent, v WALTER SARAFIAN, Appellant.—Mikoll, J.

Plaintiff and defendant were married in 1972. Plaintiff was a 16-year-old high school junior living with her parents. Defendant was a 64-year-old retiree from a jewelry business he owned, and had never been married. In consequence of the marriage, plaintiff became a school dropout. During their three-year "courtship", defendant regularly took plaintiff from her New York City home to his abandoned chicken farm in the Town of New Paltz, Ulster County, where, according to plaintiff, he had sexual relations with her. The consent of plaintiff's parents to the marriage was apparently induced by defendant's purchase of a home for them. At the time of the marriage, defendant owned his family's 67-acre chicken farm, two apartment buildings and a two-family dwelling in Queens. In 1974, he sold the apartment buildings; he testified that he did not know how much he made from the sale but that he had used both the proceeds from the sale and those gained from the liquidation of his jewelry business to buy $400,000 worth of Treasury bonds. In 1976, defendant sold the two-family residence, using the proceeds to buy a $100,000 Treasury bond.

Four children were born of the marriage, one in 1972 and another in 1975, before the family moved from Queens to New Paltz in 1978. There, they renovated a 60 by 15 foot "chicken coop" building for use as a family home. The other two children were born in 1979 and 1984. Defendant received $40,000 annually from his Treasury bonds and monthly Social

Security payments of $548 for himself and $516 for the children. He obtained additional cash by selling the jewelry he had retained from his liquidated jewelry business. Defendant required the family to lead a frugal life-style. For instance, he severely restricted the use of hot water and had plaintiff give birth to all four children at home. Additionally, they raised much of their food, which plaintiff canned for year-round use.

In 1983, defendant purchased J. D.'s Dairy Bar in New Paltz for $175,000; $75,000 of the purchase price was paid in cash and the remainder financed by a purchase-money mortgage. When plaintiff became pregnant with their last child, defendant urged plaintiff to have an abortion. Upon her refusal to do so, he began to drink heavily. He also became verbally abusive, calling plaintiff, among other things, his slave, threatening to kill her and forcing her to withdraw from two college courses. When defendant injured himself and could no longer operate the dairy bar, plaintiff operated it for him for many months, working long hours each day while caring for their new baby.

In June 1985, plaintiff moved out of the marital residence with the four children, taking $1,800 she had saved and a bag of silver coins she had found in the garage, which she converted to cash. When these funds were exhausted, she went on welfare for about eight months. Thereafter, a November 1985 Family Court order required defendant to make maintenance and child support payments. A February 3, 1986 Family Court order granted plaintiff custody of the four children, but defendant resisted, and plaintiff was unable to obtain custody of the two oldest children until March 22, 1986. Defendant violated the earlier support order, and on May 13, 1986, Family Court directed defendant to pay $1,230 per month, one half as temporary maintenance and one half as child support. Also on that day, the parties entered into a stipulation that this order "shall be modified upon a substantial change in circumstances", but that "extreme financial hardship" was not required. The stipulation also provided that Supreme Court would determine, in this divorce action, the issue of arrears from the commencement of the Family Court proceeding and counsel fees.

Plaintiff commenced this divorce action in November 1985 on the ground of cruel and inhuman treatment. Mutual divorces were granted by judgment entered March 4, 1987. The only issues fully tried were equitable distribution, custody and support. Custody of the four children was awarded to plaintiff, along with exclusive possession of the marital prem-

ises until its sale upon the youngest child's 18th birthday. A supplemental judgment of Supreme Court entered on May 1, 1987 awarded plaintiff (1) one half of the $500,000 in Treasury bonds, as valued at the date of distribution, (2) $63,011.79, representing one half of the difference between the fair market value of J. D.'s Dairy Bar and the outstanding principal balance of the purchase-money mortgage, as of the date of the commencement of the divorce action, (3) $21,702.42, representing one half of the total of deposits in four bank accounts defendant controlled, and (4) one half of the proceeds from the sale of the marital residence after first deducting $3,900, representing the value of the land at the time of the marriage, which was defendant's separate property. One half of the cost of any major house repairs was to be paid by defendant. The supplemental judgment also provided that defendant was to pay $3,000 a month, equally divided between maintenance and child support, for the period from November 29, 1985 to April 15, 1987, resulting in a pendente lite arrearage of $34,174.62. This judgment further set forth that from April 15, 1987 until plaintiff received her share of the Treasury bonds, defendant was to pay her $3,600; $2,200 of that amount was for maintenance and the remainder for child support. In addition, these amounts were to be reduced by one half, with the maintenance payments continuing until the youngest child's 18th birthday. The supplemental judgment also awarded plaintiff $13,306.47, representing one half of the counsel fees she incurred in the divorce action and support proceedings.

Supreme Court characterized defendant as a "depraved", "dishonest" and "deceitful" older man who committed "heinous" acts of statutory rape against plaintiff, thus violating "all our standards of morality and tolerable conduct", and who, after having dated and "rented" plaintiff, "bought" and married her. The court also noted that defendant was "disorderly, rude and disruptive" in the courtroom. On the other hand, Supreme Court described plaintiff as a "victim" of her parents and defendant, characterizing her as a "loving, caring, devoted and competent mother". In any relevant conflict in testimony, the court credited plaintiff's account. The court stated that these characterizations of the parties affected equitable distribution to a "tangential degree".

On this appeal, defendant, by his brief, limits the issues to equitable distribution, maintenance, support and counsel fees. The equitable distribution and counsel fee awards were stayed pending this appeal.

Under Domestic Relations Law § 236 (B) (1) (c) and (d),

marital property is subject to equitable distribution, and separate property is not. "Marital property" is to be construed broadly in order to give effect to the "economic partnership" concept of the marriage relationship *(Price v Price,* 69 NY2d 8, 15). "Separate property", an exception to marital property, should be construed narrowly; therefore, the exclusion from separate property for increases in value due partly to contributions or efforts of the nontitled spouse *(see,* Domestic Relations Law § 236 [B] [1] [d] [3]) should be broadly construed and should include indirect contributions made as parent or homemaker, as opposed to increases in value due to unrelated market forces *(Price v Price, supra,* at 15-18; *see, Majauskas v Majauskas,* 61 NY2d 481, 488-490; *Wegman v Wegman,* 123 AD2d 220, 228-229). The distribution, based on the factors enumerated in the statute (Domestic Relations Law § 236 [B] [5] [d]), must be equitable, not merely a 50/50 split of assets *(see, Lydick v Lydick,* 130 AD2d 915, 916, *lv denied* 70 NY2d 607; *Petrie v Petrie,* 124 AD2d 449, 450, *appeal dismissed* 69 NY2d 1038). "[A] court is not bound by one's own account of his finances" *(Bizzarro v Bizzarro,* 106 AD2d 690, 692), and where a party fails to trace the source of deposits claimed to be separate property, the court is justified in treating them as marital property *(Lischynsky v Lischynsky,* 120 AD2d 824, 826).

Marital fault under the catch-all factor contained in Domestic Relations Law § 236 (B) (5) (d) (13) is not to be considered unless it is "extreme" and "outrageous" *(Stevens v Stevens,* 107 AD2d 987, 989; *see, Schanback v Schanback,* 130 AD2d 332, 342; *Rosenberg v Rosenberg,* 126 AD2d 537, 539, *lv denied* 70 NY2d 601; *Blickstein v Blickstein,* 99 AD2d 287). Having in mind the aforementioned legal principles, we find persuasive defendant's argument that Supreme Court erroneously found the Treasury bonds to be marital property. Defendant was unable to specifically trace the source of the moneys he used to purchase the bonds. However, it appears that defendant sold his two apartment buildings by 1974 and thereafter purchased the four $100,000 face value Treasury bonds, and that in 1976 or 1977 he sold his two-family house and thereafter purchased the single $100,000 face value Treasury bond. The apartment buildings and two-family house were his separate property at the time of the 1972 marriage. No other possible source for the moneys used to purchase the Treasury bonds is shown. The conclusion is inescapable that these bonds were purchased from defendant's separate property; the presumption that the bonds were marital property because they

were purchased after the date of the marriage has been rebutted.

The same cannot be said of the situation in regard to J. D.'s Dairy Bar. This business was purchased in 1983, some 11 years after the parties were married. Plaintiff was a devoted mother, and for most of the 15-year marriage, a devoted wife to the much older defendant. She made significant indirect contributions to the "economic partnership" as a homemaker and helpmate, and made direct contributions by assisting defendant in constructing a livable residence out of the "chicken coop" building, in operating the dairy bar business and in living very frugally. Defendant failed to meet his burden of proving that the dairy bar was purchased only from the proceeds of separate property. The same is also true of the four bank accounts which Supreme Court found to be marital property and which were also acquired during the marriage and controlled by defendant. Defendant's testimony on the sources of these moneys was vague, evasive and inconsistent. Accordingly, Supreme Court cannot be said to have abused its discretion in determining that the dairy bar and the four bank accounts were marital property.

Supreme Court properly based the value of the credit to defendant for the marital residence on its value at the time of the marriage, and not its future sale, since any appreciation in its value was taken out of the narrow separate property exception in Domestic Relations Law § 236 (B) (1) (d) (3) by plaintiff's contributions as parent, homemaker and helpmate (see, Price v Price, 69 NY2d 8, 15-18, supra; Brennan v Brennan, 103 AD2d 48). In addition, Supreme Court did not abuse its discretion in ordering defendant to share in the cost of major repairs to the marital residence, as defendant will share in the proceeds of the eventual sale of the property. Preservation of the value of the property is clearly in his own interest. Likewise, we find no abuse of discretion in the order directing defendant to pay one half of plaintiff's counsel fees (see, Domestic Relations Law § 237 [a]). A determination regarding legal fees should not be disturbed unless it constitutes an abuse of discretion (Foxx v Foxx, 114 AD2d 605, 607).

Concerning the temporary and permanent maintenance and child support awards, Supreme Court could properly make de novo awards despite the prior Family Court order and the stipulation of the parties (see, Domestic Relations Law § 236 [B] [6], [7]). The May 13, 1986 stipulation, incorporated into a Family Court order, indicated that the parties intended to have Supreme Court make an independent determination

regarding temporary support amounts and arrears. In the case of child support payments, a party's misconduct should not be considered *(see,* Domestic Relations Law § 236 [B] [7] [a]), but fault is generally a proper consideration in maintenance awards *(see, Wilbur v Wilbur,* 116 AD2d 953; *Nolan v Nolan,* 107 AD2d 190).

Our finding that Supreme Court's classification of the Treasury bonds as marital property and its award of one half of the bonds to plaintiff was error creates a substantial change in Supreme Court's determination. This case must therefore be remitted to Supreme Court for reconsideration of its awards relating to marital property, support, maintenance and counsel fees.

Judgment and supplemental judgment modified, on the law and the facts, without costs, by reversing so much thereof as made awards relating to marital property, support, maintenance and counsel fees; matter remitted to the Supreme Court for further proceedings not inconsistent with this court's decision; and, as so modified, affirmed. Casey, J. P., Weiss, Mikoll, Yesawich, Jr., and Levine, JJ., concur.