■ KAREN DUGUE, Respondent-Appellant, v JOHN DUGUE, Appellant-Respondent.—Yesawich, Jr., J. Appeals (transferred to this court by order of the Appellate Division, Second Department) (1) from a judgment of the Supreme Court (Beisner, J.) ordering, *inter alia,* equitable distribution of the parties' marital property, entered December 6, 1989 in Dutchess County, upon a decision of the court, and (2) from an order of said court, entered September 7, 1989 in Dutchess County, which denied plaintiff's motion for counsel fees.

The parties, both 29 years old at the time, were married on August 10, 1972. This divorce action was commenced on April 17, 1985. Although there were no issue from their union, the three children from plaintiff's previous marriage lived with the couple while they were still together. During the marriage, both parties obtained real estate licenses, and plaintiff also acquired a nursing license. In addition, they purchased a number of income-producing properties, several cars and other tangible items. In 1981, defendant started a real estate business, John Dugue, Inc., which he continues to operate.

Supreme Court granted mutual divorces, awarded the parties their identified separate property, ordered property it determined to be marital property sold and the proceeds therefrom equally divided, denied defendant any distributive award for plaintiff's nursing degree, credited plaintiff with one fourth of the value of John Dugue, Inc. and denied plaintiff's motion for counsel fees. Plaintiff appeals the denial of her request for counsel fees, while defendant challenges the court's distribution of the parties' real and personal property.

Examination of Supreme Court's comprehensive decision

discloses that the court properly weighed all the relevant factors required to be considered in effecting equitable distribution, including the tax consequences and earning power of the parties (see, Domestic Relations Law § 236 [B] [5] [d] [8], [10]), and then divided the property essentially equally. In view of the length of the marriage and the financial and other contributions of the parties, that division is fair (see, Bisca v Bisca, 108 AD2d 773, 774, appeal dismissed 66 NY2d 741).

Initially, we note that the bulk of defendant's criticism of Supreme Court's decision is directed at that court's resolution of credibility issues. To the extent that defendant claims that his witnesses' testimony should have been credited rather than plaintiff's, we find no reason to disturb the court's treatment of these issues (see, Lischynsky v Lischynsky, 120 AD2d 824, 827-828). In any event, defendant's own testimony belies many of his challenges to the award's fairness. For example, he suggests that plaintiff's earning potential is greater than his own and that this fact, coupled with his alleged poor health, mandates that he be allotted more than a 50% share of the marital property. Defendant testified, however, that even though he has worn a pacemaker since 1976, at the time of trial he worked seven days a week, eight hours a day, and earned between $60,000 and $100,000 yearly. Plaintiff, in contrast, though in good health, earned a maximum of only $29,000.

Equally uncompelling is defendant's contention that his property flow chart, which purportedly identifies the cash source for each real property purchase, was uncontroverted. The record is to the contrary; plaintiff testified at trial, and Supreme Court apparently accepted her testimony, that the money to attain these properties came from the parties' joint bank accounts.

Nor is defendant entitled to the entire proceeds from the sale of his Mercedes automobile. The vehicle was purchased before this action was commenced, the date Supreme Court chose as the valuation date; accordingly, it was rightly considered marital property (see, Domestic Relations Law § 236 [B] [1] [c]). And as for defendant's assertion that he should be credited with an undocumented $30,000 loan advanced to him by his mother, which money was used by the parties to start-up the John Dugue, Inc. real estate agency, it suffices to note that this money was first deposited into the parties' joint account and then later withdrawn to begin the business. Given the presumption that the parties are equally entitled to deposits made to joint accounts (Banking Law § 675 [b]; see,

*Parry v Parry,* 93 AD2d 989, 990), and that defendant's proof failed to overcome this presumption, the loan proceeds were thereby converted into marital property *(see, Di Nardo v Di Nardo,* 144 AD2d 906, 907; *Lischynsky v Lischynsky, supra,* at 826; 3 Foster, Freed and Brandes, Law and the Family § 2:7, at 69-70 [2d ed]).

A number of defendant's other challenges which do not turn on the parties' credibility are simply unsupported by the record. There is no evidence to support defendant's charge that plaintiff secreted money in a bank account not listed on her statement of net worth to prevent Supreme Court from distributing it equitably. Nor is there any evidence buttressing defendant's claim that he earned the $70,000 in his bank account from commissions on his real estate transactions; hence, Supreme Court cannot be faulted for distributing one half of this amount to plaintiff. And notwithstanding whether defendant's claim that his financial contribution to the marriage exceeded plaintiff's is accurate, the fact remains that it fails to appreciate the substantial contribution plaintiff made as wife, homemaker, and business associate *(see, Day v Day,* 112 AD2d 972, 973; *Harness v Harness,* 99 AD2d 658; *see,* 3 Foster, Freed and Brandes, Law and the Family § 16:6, at 682 [2d ed]).

There is little question that plaintiff's nursing degree, obtained during the marriage, is marital property *(see, O'Brien v O'Brien,* 66 NY2d 576, 585), or that Supreme Court did not equitably apportion the nursing license's value because defendant's expert (and parenthetically plaintiff's as well) did not present an evaluation of it based on plaintiff's actual past and projected future earnings *(see, McGowan v McGowan,* 142 AD2d 355, 359 n; *see, e.g., O'Brien v O'Brien, supra,* at 588). There being no acceptable proof of the value of this property in the record, and bearing in mind that this trial, following an earlier mistrial, spanned more than a year, a remittal for additional hearings on this issue is, in our view, unjustified *(accord, Davis v Davis,* 128 AD2d 470, 475; *compare, Niles v Niles,* 126 AD2d 874, 875).

Nor is defendant entitled to a credit for the amount of temporary maintenance he paid plaintiff ($7,800 per year since 1986) in light of the fact that he received all the rental income from the jointly owned real estate since 1984. This net profit of $8,000 per year, which was in fact marital property, more than satisfied the maintenance obligation.

Defendant identifies 25 items of personal property that he

maintains he owned before the marriage and which he claims Supreme Court refused to award to him. Of these, at least 15 of the indicated items were in fact awarded to defendant.* With respect to the remaining 10 items, defendant should be given an opportunity to demonstrate which of those were his separate property and the value thereof. And with respect to those items deemed marital property which have apparently already been sold by auction, defendant should be credited with the proceeds therefrom. Any such items which have not been sold and are found to be defendant's personal property should be returned to him.

Given the parties' financial circumstances and counsels' obstructive behavior during the course of this litigation (see, Nemia v Nemia, 124 AD2d 407, 408, lv denied 69 NY2d 611), Supreme Court's decision declining plaintiff's request for counsel fees did not constitute an abuse of discretion (see, Decabrera v Cabrera-Rosete, 70 NY2d 879, 881; see also, Domestic Relations Law § 237 [a]). The parties' remaining arguments do not merit discussion.

Judgment modified, on the law and the facts, without costs, by deleting so much thereof as found the following items to be marital or plaintiff's property:

Oil on canvas signed Francis Day "Winter Scene"

Oil on canvas signed Francis Day "Coaching Scene"

Steuben decanter

Cut glass handled pitcher

Green fan shape vase signed S. Carter

Grouping of lion & lioness signed Mason

Oil on canvas signed Browsky

Hanging leaded fixture-white sling glass

Highback ladder chair

Collection of old books;

matter remitted to the Supreme Court for further proceedings not inconsistent with this court's decision; and, as so modified, affirmed.

Order affirmed, without costs. Casey, J. P., Mikoll, Yesawich, Jr., Mercure and Crew III, JJ., concur.

---

* These items are: one pair American brass candlesticks with push ups, lonestar quilt, gate leg drop-leaf table, Hawkes vase, six Hawkes tumblers, silver on bronze vase, Jasperware plaque, dome top trunk, small leaded art nouveau lamp, Gone With the Wind lamp, antique lavalier set in gold, tan patch work quilt, English ladies secretary with bookcase, telephone lamp-red, and Spooner pressed glass.