■ MARY A. CERRETANI, Appellant, v RALPH CERRETANI, Respondent. [634 NYS2d 228] —Peters, J. Appeal from that part of a judgment of the Supreme Court (Monserrate, J.) ordering equitable distribution of the parties' marital property, entered May 20, 1994 in Broome County, upon a decision of the court.

Plaintiff and defendant were married on July 27, 1974 in a wedding attended by approximately 450 people. Moneys received as wedding gifts were placed into one of defendant's checking accounts which was in existence prior to the marriage. It appears that at some point, this account became their joint account. Defendant testified that he maintained several accounts since he had a substantial amount of money, stocks and trust accounts, given by gifts or bequests from his family. He further came to the marriage with an ownership interest in the family business, Corbisello Quarries, and 26 acres of land in the Town of Vestal, Broome County.

Following their wedding, the parties lived in Boston while defendant attempted to complete his college education. According to plaintiff, defendant received a small salary from Corbisello Quarries, income from family trusts, separate property and other assets, and lived a lavish lifestyle in an apartment furnished with items from defendant's family. While their first car was a Mercedes Benz, they later purchased a 1951 antique MG and made use of an airplane shared by defendant and his brother to fly back and forth from New York to Boston. Plaintiff testified that she did not work and occasionally took flying lessons while her husband attended school. While still in Boston, defendant invested approximately $21,000 in Miller Aviation, Inc. (hereinafter Miller) and became a 25% owner along with his brother and a friend. Plaintiff and defendant

thereafter moved back to Broome County and defendant began work at Corbisello Quarries while plaintiff did some substitute teaching at a local school until the birth of their first child. Plaintiff eventually became the primary child caretaker and remained so over the next several years. During this time, defendant invested with his brother and others in several restaurants in Broome County, Oneida County and Boston, each of which ultimately failed. Defendant was forced to take out a line of credit on the marital home in order to pay these debts.

In approximately 1982, the parties began to purchase and develop real estate in Broome County. They formed Marc Development Corporation (hereinafter Marc), naming plaintiff and defendant's mother as equal shareholders. Plaintiff then became actively involved in Marc on a full-time basis. She drew salary and completed various research and development projects relating to its acquisition of land. They also participated in another real estate company which developed properties with townhouses or single-family homes until the real estate market began to fail.

In October 1990, defendant moved out of the marital residence. Plaintiff sued defendant for divorce and, while the divorce was pending, obtained an order from Family Court for $350 per week in spousal support and $291 per week in child support. After the parties separated, there were no payments made on the marital residence and therefore a foreclosure was scheduled. Plaintiff filed for chapter 13 bankruptcy protection.

Defendant later withdrew his opposition to the divorce and Supreme Court granted plaintiff a divorce upon the ground of cruel and inhuman treatment. In addressing equitable distribution issues, Supreme Court found, *inter alia*, that due to the longevity of the parties' marriage and the " 'premise that a marriage is, among other things, an economic partnership *to which both parties contribute as spouse, parent, wage earner or homemaker*' " (*Price v Price*, 69 NY2d 8, 14, quoting *O'Brien v O'Brien*, 66 NY2d 576, 585 [emphasis in original]) that "an equal division between the parties seems fair". Notwithstanding the presumption that exists in the law that property acquired during a marriage is presumed to be marital and thus should one party claim that it is separate, such party must bear the burden of disproving the presumption (*see, Pullman v Pullman*, 176 AD2d 113; *Sarafian v Sarafian*, 140 AD2d 801), Supreme Court, citing *Davis v Davis* (128 AD2d 470), found that it was plaintiff's burden to rebut the presumption that money used for defendant's investment in Miller was some-

thing other than premarital funds. Having failed to do so, the court found Miller to be separate property not subject to equitable distribution.

Noting that marital property is more liberally construed than separate property (see, Price v Price, supra; Majauskas v Majauskas, 61 NY2d 481), we find the record clear that when the presumption is properly placed, it was defendant who failed to sustain his burden of showing that the investment into Miller was derived from premarital funds. We find defendant's attempt to prove the source of the moneys used for the Miller investment insufficient. His speculative responses and the lack of documentary evidence such as ledgers, bank statements or deposit slips which could trace the source of funds was glaring. While it was undisputed that the wedding money was deposited into a checking account that defendant had previously maintained and that had separate funds remained therein at such time, such funds would have become commingled (see, Glazer v Glazer, 190 AD2d 951; Wiercinski v Wiercinski, 116 AD2d 789), we find that unlike the situation in Sarafian v Sarafian (supra), there were various sources of income during the parties' marriage which could have served as the source for the investment in Miller. Hence, with defendant failing to rebut such presumption, we find Supreme Court to have erred when it classified Miller as separate property.

Noting Supreme Court's determination that plaintiff was entitled to 50% of all marital assets, we must now attempt to assess the valuation of Miller. Recognizing that there are several methods available to value a close corporation, including capitalization of earnings (see, Wilbur v Wilbur, 116 AD2d 953), asset valuation (see, supra), Internal Revenue Service factors (see, Amodio v Amodio, 70 NY2d 5) and stockholders' agreements (see, Rosenberg v Rosenberg, 126 AD2d 537, lv denied 70 NY2d 601), and that no one method is more appropriate (see, Amodio v Amodio, supra), we find that we are wholly unable to determine from the determination rendered whether Supreme Court considered all of the circumstances that comprise the "present worth of the property to the titleholder" (supra, at 8). In not indicating the factors considered or how it arrived at whatever value given, itself an error (see, Domestic Relations Law § 236 [B] [5] [g]; DeSantis v DeSantis, 205 AD2d 928), we have no basis to assess such valuation. Therefore, we must remit the issue to Supreme Court.

As to plaintiff's contention that Supreme Court failed to award her a credit for the capital loss carry forward, we find no merit. Without determining whether this is marital prop-

erty subject to equitable distribution, we find that this tax circumstance is not the type of "property" addressed in Domestic Relations Law § 236 (B). While the statute does list tax consequences as a factor in distribution (see, Domestic Relations Law § 236 [B] [5] [d] [10]), we find such consideration to relate only to the consequences of distribution. As to plaintiff's further contention that she was entitled to a greater distribution due to defendant's failed investments, we find her testimony insufficient to even consider it as a factor (see, Domestic Relations Law § 236 [B] [5] [d] [11]) and that she fully participated in many of these endeavors.

Finally, as to plaintiff's contention that an award of counsel and expert fees should have been considered pursuant to Domestic Relations Law § 237 (see, Linda R. v Richard E., 176 AD2d 312; West v West, 172 AD2d 1064), we agree. Due to the sparsity of detail in Supreme Court's decision, we find no indication that it was considered and rejected. We note that a request for fees was made in plaintiff's complaint and in the proposed distribution and that due to the great disparity in their financial positions, an award of fees would not be inappropriate (see, Wexler v Wexler, 162 AD2d 326). Hence, the court is directed to address this issue upon remittal (see, Foster v Foster, 154 AD2d 334).

We therefore modify the judgment and remit to Supreme Court for appropriate findings.

Mikoll, J. P., Crew III, Casey and Yesawich Jr., JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as found Miller Aviation, Inc. to be separate property; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.