■ MEGGIE LEE, Appellant, v JOHN LEE, Respondent. [853 NYS2d 34]—

Order, Supreme Court, New York County (Leslie S. Lowenstein, Special Referee), entered on or about February 13, 2007, which equitably distributed the parties' marital property, unanimously modified, on the law and the facts, plaintiff awarded half the shares defendant holds jointly with his son, Christian Lee (i.e., Con Edison, Walt Disney, General Electric, Home Depot, Johnson & Johnson, McDonald's, Medco Health, Merck, Pfizer, Viacom, Wal-Mart and Vanguard Windsor II), half the IBM shares defendant purchased on November 10, 1989 (as adjusted for subsequent stock splits), one quarter of the Prudential shares titled in defendant's name, half the funds in the Citibank insured money market account jointly held by defendant and Christian, and 25% of the appreciation in the value of the marital residence, and otherwise affirmed, without costs.

Defendant sufficiently showed that the treasury bills titled in his name and the names of his children from his first marriage came from separate assets (*see Sarafian v Sarafian*, 140 AD2d 801, 804-805 [1988]). By contrast, he offered no documentary evidence that prior to his marriage to plaintiff, he had been in the habit of jointly owning stocks with his son. Furthermore, many of the initial stock investments were modest and could have come out of the parties' marital income as opposed to defendant's premarital savings.

The stocks jointly titled in defendant and his son were purchased during the marriage, and are thus presumptively marital property despite the form of the title (*see* Domestic Relations Law § 236 [B] [1] [c]). It was defendant's burden to rebut this presumption (*see DeJesus v DeJesus*, 90 NY2d 643, 652 [1997]), and he failed to do so. Indeed, there was evidence that some of the investment in the Vanguard Windsor II fund came from the parties' joint checking account, and that most of the funds for the Pfizer and Merck shares originally came from the parties' joint preferred money market account.

The insured money market account at Citibank, jointly titled in defendant's and his son's name, was also opened during the marriage, so it, too, is presumptively marital property. In reviewing defendant's net worth statement and his trial testimony as a whole, we find that he failed to rebut the presumption that the account was marital property. Among other things, he commingled money from the parties' joint preferred money market account (later renamed a Super Yield money market account) with the insured money market account.

On November 10, 1989 (i.e., during the marriage), defendant purchased 40.707 shares of IBM. The funds to purchase these shares came from the insured money market account, but defendant failed to prove that account was his separate property. Accordingly, we find that this IBM stock, as adjusted for subsequent stock splits, constitutes marital property.

There are 100 Prudential shares titled in defendant's name. He received some of these shares when Prudential demutualized, but by his own admission, some were purchased during the marriage with joint funds. The shares resulting from the demutualization are defendant's separate property, but the additional purchased shares are marital property. Since the demutualization occurred in 2001 (i.e., during the marriage), it was defendant's burden to prove how many shares came from the demutualization and how many from the additional purchases. Since he did not, we will deem half the Prudential shares to be separate property and half marital property.

In light of the parties' 24-year marriage and their equal contribution thereto, we award plaintiff half the shares titled jointly in defendant and his son, half the bank account titled in defendant and his son, half of the 40.707 IBM shares purchased on November 10, 1989 (as adjusted for subsequent stock splits), and one quarter of the Prudential shares (i.e., half of the portion of the Prudential shares constituting marital property) (*see e.g. Bisca v Bisca*, 108 AD2d 773, 774-775 [1985], *appeal dismissed* 66 NY2d 741 [1985]).

Plaintiff's contention that she should be awarded half the appreciation that occurred during the marriage in the value of the Exxon Mobil and other IBM shares defendant had purchased before the marriage is unavailing. The increase in the value of stock in these large, publicly traded corporations was due to market forces and inflation, not defendant's efforts (*see e.g. Price v Price*, 69 NY2d 8, 18 [1986]).

It is undisputed that the marital residence, which defendant purchased long before the parties' marriage, is defendant's separate asset. During the long-standing marriage, the residence increased in value by $585,000. In view of plaintiff's direct and indirect contributions to the marriage and the home, we conclude that she should have been awarded one quarter of the appreciation of the residence (*Price v Price*, 69 NY2d 8 [1986]). Concur—Mazzarelli, J.P., Andrias, Saxe, Gonzalez and Sweeny, JJ.