Westreich v Westreich (2019 NY Slip Op 01256)





Westreich v Westreich


2019 NY Slip Op 01256


Decided on February 20, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 20, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
RUTH C. BALKIN
FRANCESCA E. CONNOLLY
LINDA CHRISTOPHER, JJ.


2016-10561
 (Index No. 201348/13)

[*1]Dale Westreich, respondent, 
v
Anthony Westreich, appellant.


Laurence P. Greenberg, New York, NY (Seth Ginsberg and Scarlett Van Syoc of counsel), for appellant.
Cohen Rabin Stine Schumann LLP, New York, NY (Harriet Newman Cohen, Bonnie E. Rabin, Tim James, and Amanda Laird Creegan of counsel), for respondent.



DECISION & ORDER
In an action for a divorce and ancillary relief, the defendant appeals from a judgment of divorce of the Supreme Court, Nassau County (Jeffrey A. Goodstein, J.), dated March 16, 2017. The judgment, insofar as appealed from, upon a decision of the same court dated August 22, 2016, made after a nonjury trial, and upon an order of the same court entered January 4, 2017, granting the plaintiff's application for an award of counsel fees to the extent of awarding her the sum of $425,000, (1) apportioned responsibility for certain marital debt 75% to the defendant and only 25% to the plaintiff, (2) denied the defendant a credit of $2,565,934 for separate property contributed to the acquisition of the marital residence, (3) awarded the plaintiff 75% of the proceeds from the sale of certain antiques, furnishings, and artwork, and the defendant only 25% thereof, and awarded the plaintiff 100% of her jewelry, (4) awarded the plaintiff the sum of $1 million per year in maintenance for a period of four years, (5) awarded the plaintiff the sum of $100,000 per year in basic child support, and (6) awarded the plaintiff counsel fees in the sum of $425,000.
ORDERED that the judgment of divorce is modified, on the law, on the facts, and in the exercise of discretion, (1) by deleting the provision thereof directing that the outstanding debt to the Stanley Westreich Trust shall be allocated 75% to the defendant and 25% to the plaintiff, such that the defendant is responsible for repaying $15,564,750 and any interest thereon, and the plaintiff is responsible for repaying $5,188,250 and any interest thereon, and substituting therefor a provision directing that the outstanding debt to the Stanley Westreich Trust shall be allocated 50% to the defendant and 50% to the plaintiff, such that each party is responsible for repaying $10,376,500 and any interest thereon, and (2) by deleting the provision thereof denying the defendant a credit in the sum of $2,565,934 for separate property contributed to the acquisition of the marital residence, and substituting therefor a provision awarding the defendant such a credit; as so modified, the judgment of divorce is affirmed insofar as appealed from, with costs to the defendant.
The plaintiff and the defendant were married on May 5, 2001. They have two children, born in 2002 and 2003, respectively. The plaintiff commenced this action for a divorce and ancillary relief on May 14, 2013. The parties entered into an agreement dated July 20, 2015, which was so-ordered by the Supreme Court and incorporated into the judgment of divorce, in which they agreed that they would share joint legal custody of the children, they would have an equally shared [*2]parental access schedule, and the plaintiff would be deemed the primary residential parent for purposes of the Child Support Standards Act (Domestic Relations Law § 240[1-b]). The remaining issues were tried before the court in a lengthy trial that commenced in January 2016. The court rendered a decision dated August 22, 2016, on the issues of equitable distribution, maintenance, and child support. After the parties provided written submissions on the issue of counsel fees, the court determined that the plaintiff should be awarded counsel fees in an order entered January 4, 2017, which was incorporated into a judgment of divorce dated March 16, 2017. The defendant appeals from stated portions of the judgment of divorce relating to equitable distribution, maintenance, child support, and the award of counsel fees to the plaintiff.
The parties have substantial wealth, as reflected in the portions of the equitable distribution determination which are not at issue on this appeal. Among other things, the defendant was awarded sole interest in a multimillion dollar condominium in Sea Island, Georgia; the plaintiff was awarded sole interest in a multimillion dollar vacation property in Southampton; the marital residence in Old Westbury, which is to be sold, is worth between $7.6 and $10.5 million; the defendant has a business interest entitled Monday Properties Services (hereinafter Monday Properties) found to be worth over $7.5 million, of which the plaintiff was awarded a 25% interest; and the defendant has an interest in a portfolio of office buildings in Rosslyn, Virginia, determined to be worth almost $14.5 million, of which nearly $9.7 million was determined to be marital property and of which the plaintiff was awarded a 25% interest. According to the plaintiff, the net value of her equitable distribution award is $17,336,371, taking into account both the assets and the debts allocated to her by the Supreme Court.
Prior to the trial, the Supreme Court, in an order dated November 24, 2015, granted the defendant's motion for summary judgment determining that the sum of $41,925,000 loaned by the Stanley Westreich Trust, a trust in the name of the defendant's father (hereinafter the Trust), to the defendant, or to entities controlled by the defendant, constituted a legitimate marital debt subject to equitable distribution. Although the plaintiff opposed the defendant's motion for summary judgment in the court, the plaintiff does not contest on appeal the determination to grant the motion. After trial, the court determined that the amount still due to the Trust was $20,753,000, and that the defendant should be responsible for repaying 75% of the outstanding debt ($15,564,750) and the interest due on this portion of the debt, and the plaintiff should be responsible for repaying 25% of the outstanding debt ($5,188,250) and the interest due on that portion of the debt.
On appeal, the defendant argues that the responsibility for the debt owed to the Trust should have been allocated equally between the parties. He points out that, as the Supreme Court found, the debt to the Trust was incurred for the purpose of enabling the defendant to purchase an interest in entities that owned various real estate holdings, and that such holdings generated income for the parties during the marriage. The defendant also points out that, during the pendency of the action, he repaid the Trust, through the use of marital funds, approximately $21 million of the nearly $42 million originally owed to the Trust, an action for which he was adjudged to be in contempt prior to trial, which adjudication was vacated after trial based on the court's finding that the repayment was in the ordinary course of business. The court determined that the loans were taken out for the acquisition of interests in real property, that such loans were in the nature of a mortgage, and that when the acquired real property was sold, the loans were repaid. The defendant argues that, by validating his repayment of nearly $21 million from marital funds, the court effectively made the plaintiff responsible for 50% of the amount repaid, in contrast to the court's determination that she would be responsible for only 25% of the remaining debt. The plaintiff counters that making her responsible for 50% of the Trust debt would significantly change the court's integrated equitable distribution plan and, in any event, the defendant could avoid the debt if the Trust, of which the defendant is the named successor trustee, extended the debt and the defendant would recover, through inheritance, one-third of the amount of the debt. The court, in its posttrial determination, while specifically finding that both parties enjoyed the use of the borrowed funds, did not explain its unequal allocation of this debt, beyond a general, conclusory reference to the circumstances of the case and to the credibility of all of the witnesses with regard to these loans.
The Supreme Court's reliance upon the credibility of the witnesses with regard to the [*3]loans as a basis for allocating the Trust debt unequally is inconsistent with its previous determination that this debt was legitimate marital debt and was used to acquire marital assets during the marriage. It is also inconsistent with the court's conclusion, after trial, that there is no doubt that both parties enjoyed the use of the borrowed funds. As there is no dispute as to the legitimacy of the debt and that both parties benefitted therefrom, the issue is whether the circumstances of the case warrant an equal or unequal division of responsibility for the debt. We see no reason why responsibility for the amount of debt left unpaid should be allocated differently from the responsibility for the partial payment that was made on that same debt, noting that the court did not offer a reason for the discrepancy.
"As a general rule, where the payments are made before either party is anticipating the end of the marriage, and there is no fraud or concealment, courts should not look back and try to compensate for the fact that the net effect of the payments may, in some cases, have resulted in the reduction of marital assets. . . . Courts should not second-guess the economic decisions made during the course of a marriage, but rather should equitably distribute the assets and obligations remaining once the relationship is at an end" (Mahoney-Buntzman v Buntzman, 12 NY3d 415, 421). Liability for marital debt need not be equally apportioned but should be distributed in accordance with general equitable distribution principles and factors (see Minervini v Minervini, 152 AD3d 666, 668; Lewis v Lewis, 6 AD3d 837, 839-840). Nevertheless, the burden of repaying marital debt should be equally shared by the parties in the absence of countervailing factors (see Gillman v Gillman, 139 AD3d 667, 671; Mosso v Mosso, 84 AD3d 757, 760; Corbett v Corbett, 6 AD3d 766, 768).
Here, the Supreme Court apportioned specific marital assets in different percentages, awarding the plaintiff title to certain assets, awarding the defendant title to other assets, dividing certain assets 75/25, the marital residence 60/40, and other assets 50/50. While the division of liabilities need not be in the same proportion as the division of assets, in the absence of the consistent use of the same percentage, we, from the perspective of a reviewing court, must consider the reasons offered to support the allocation of the particular asset or liability at issue. Given the substantial nature of the assets received by both parties, the Supreme Court's unchallenged and explicit finding that the debt to the Trust was marital debt from which both parties benefitted, and the court's determination that the defendant's payment of a portion of the Trust debt from marital funds during the pendency of the action was not inappropriate, we conclude that the responsibility for the remaining debt owed to the Trust should be apportioned equally between the parties.
The defendant takes issue with the Supreme Court's determination to allocate to him 75% of the outstanding debt attributable to a real estate investment in Washington, D.C., and to allocate to the plaintiff only 25% of that debt. The property in question was, at one time, owned by the defendant and his siblings. However, during the marriage, the defendant and his siblings forfeited their interest by tendering it to the lender, leaving a balance due to the lender by the defendant of $2,424,119. While the defendant no longer has an ownership interest in the building, his company, Monday Properties, manages it, though the building was empty at the time of the trial. Given that the court allocated the value of Monday Properties 75% to the defendant and 25% to the plaintiff, we see no reason to disturb the court's allocation of this investment debt in the same proportion, particularly given the absence of any finding by the court that the plaintiff derived any particular or special benefit from the subject property.
The defendant asserts that the Supreme Court should have awarded him a separate property credit in the sum of $2,565,934 against the value of the marital residence. While the court denied the defendant this credit, it allocated the proceeds of the sale of the marital residence 60% to the defendant and 40% to the plaintiff based on the defendant's contribution of separate property to the purchase, renovation, and furnishing of the residence.
Where a party contributes his or her separate property toward the purchase of a marital asset, such as a marital residence, the party should be given a credit for the amount so contributed prior to the equitable division of the asset (see Spencer-Forrest v Forrest, 159 AD3d 762, 765; Seifried v Seifried, 296 AD2d 398, 399; Robertson v Robertson, 186 AD2d 124, 125; [*4]Coffey v Coffey, 119 AD2d 620, 622).
The parties purchased the marital residence on March 25, 2002, for $3,875,000. The purchase was made with $2,565,934 in cash, and the balance of the purchase price was financed. On March 21, 2002, the Thursday preceding the Monday closing, $2,600,000 was wired into an account in the joint names of the parties at Merrill Lynch. The next day, two certified checks were issued on that account totaling $2,565,934. There is no dispute that the $2,565,934 came from an account of Westfield Services (hereinafter Westfield), which account was maintained by the defendant's family, although there is no document that reflects the withdrawal of the funds from Westfield. According to the defendant, the amount withdrawn from Westfield came from his premarital interest in Westfield and was charged against his share of that family asset.
The Supreme Court denied the defendant's request for a separate property credit for three reasons: there was a debit of $1,775,000 from the Merrill Lynch account on March 12, 2002, apparently representing a transfer to the Westfield account; the testimony of the defendant and his father that no earnings were deposited into the Westfield account was self-serving; and there was no documentation of the transfer from Westfield. We disagree with the court's determination.
The defendant's father testified that Westfield was an entity that he established in the late 1960s or early 1970s and was used to distribute monies for the benefit of his family. According to the defendant and his father, no deposits were made into the Westfield account, other than from premarital investments, from the date of the marriage in May 2001 to the date of the closing on the marital residence in March 2002. The defendant testified that he caused the funds necessary for the purchase of the marital residence to be transferred from the Westfield account to the joint Merrill Lynch account for convenience in that there was no ability to write certified checks on the Westfield account. The funds were in the joint account only for a few days before they were disbursed for the purchase of the residence.
The Supreme Court's observation that there was a debit from the Merrill Lynch account on March 12, 2002, in the sum of $1,775,000, apparently in favor of Westfield, was not prompted by any testimony or any argument of the parties. The significance of this transaction is that it created the impression that the defendant was taking monies out of the joint Merrill Lynch account and placing them into his premarital Westfield account. However, the notation in the Merrill Lynch account statement with respect to this withdrawal is cryptic, and no testimony was elicited regarding it. No matter what significance the notation might otherwise have had, the court overlooked that the account statement also reflects a deposit into the Merrill Lynch account on the same day in the same sum. The account statement does not reflect whether the transfer out of the joint Merrill Lynch account to Westfield on March 12, 2002, occurred before or after the matching transfer into the joint account. Either way, the one-day transfer in and out does not contradict the defendant's showing that the funds used to acquire the marital residence came from his premarital Westfield account, which also occurred on a rapid, in-and-out basis.
That the testimony of the defendant and his father was self-serving, while a factor in determining its reliability, does not necessarily make it incredible. Likewise, the absence of Westfield records must be weighed against the evidence that the Westfield account was liquidated in May 2005, a decade prior to the trial. There is no evidence that the defendant destroyed or intentionally withheld any Westfield documents. More important, there is no evidence that refutes the defendant's contention that his interest in the Westfield account was premarital, separate property, and there is no evidence that the funds used to provide the cash component of the purchase price of the marital residence did, or even could have, come from any marital property source (see Foppiano v Foppiano, 166 AD2d 550, 551; Sarafian v Sarafian, 140 AD2d 801, 804). Given the documented deposit of $2,565,934 into the joint Merrill Lynch account just 10 months after the marriage, the absence of any preexisting marital account or asset in such an amount, and the rapid in-and-out nature of the transaction just prior to the closing, the conclusion is inescapable that the $2,565,934 came from the defendant's premarital assets, and he should have received a credit therefor (see Heine v Heine, 176 AD2d 77, 83-84).
We recognize that the Supreme Court provided for a 60/40 division of the sale proceeds of the marital residence, in part as a means of recognizing the defendant's separate property contribution to its acquisition. However, even though we award the defendant a separate property credit, we do not disturb the court's 60/40 division of the remaining proceeds because of the defendant's use of the net proceeds of the liquidation of the Westfield account in 2005 to pay for significant renovations to the marital residence and to satisfy the mortgage on the property, recognizing as well that the plaintiff was awarded 75% of the proceeds from the sale of the furnishings in the marital residence.
The defendant contends that the Supreme Court should not have awarded the plaintiff 75% of the proceeds from the sale of the furnishings, antiques, and art in the marital residence, and 100% of her own jewelry. However, we see no basis to disturb the court's award in these respects (see Ralis v Ralis, 146 AD3d 831; Scher v Scher, 91 AD3d 842). The plaintiff used her knowledge and expertise in acquiring the personalty in the marital residence, while the defendant was uninvolved. Further, the parties gave each other jewelry during the marriage, and it was appropriate for each party to retain his and her jewelry.
The defendant's remaining contentions are without merit.
SCHEINKMAN, P.J., BALKIN, CONNOLLY and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court