STATE OF NEW YORK ex rel. H.K., Appellant, v M.S., Respondent.

First Department, January 19, 1993

APPEARANCES OF COUNSEL

Appellant *pro se.*

*William C. Herman* of counsel *(Steven M. Silpe, Frederic J. Siegel* and *Mary G. Notaro* with him on the brief; *Rosenthal Herman & Mantel, P. C.,* attorneys), for respondent.

## OPINION OF THE COURT

ROSENBERGER, J.

We agree with the Supreme Court that the best interest of the child will be served by awarding sole custody to the respondent, with supervised visitation to be accorded the petitioner.

The petitioner father, an attorney and investor, instituted this action by writ of habeas corpus on August 24, 1988, seeking custody of his son, who was then three years old. The petitioner and the respondent mother, an art dealer, were married in 1983 and entered into a separation agreement on December 18, 1987. While the agreement provided for joint custody of the child, who was born on August 11, 1985, he was to reside with the respondent, with petitioner exercising daily visitation rights. The parties have since divorced.

After the respondent was notified, in August of 1988, that a former employee of the petitioner had filed a complaint with authorities alleging that he had sexually abused their son, the respondent began denying the petitioner his visitation rights. In response to the writ, the respondent requested an investigation by the court and a determination of custody. She further sought an order granting her temporary sole custody of the child subject to limited supervised visitation rights for the petitioner.

The court ordered that the petitioner's visitation with the child be supervised by the petitioner's mother, then by a person without ties to the parties, concluding that even if there was a "one in ten thousand" chance that the allegation of abuse was true, she would not take such a chance with a three year old. While, as the petitioner contends, the standard stated by the court was erroneous, the determination imposing supervised visitation was clearly in the best interest of the child, the determining factor in adjudicating visitation rights *(Alfano v Alfano,* 151 AD2d 530). The serious nature of the allegation, together with the evidence and the impressionable age and vulnerability of the child constituted compelling

reasons for imposing restrictions on visitation *(see, Matter of McCauliffe v Peace,* 176 AD2d 382).

Unsupervised visitation was thereafter reinstated until October of 1990, when the petitioner became, by his own words, "emotionally paralyzed", and appeared, on one occasion, as characterized by the court, to be suffering a "nervous breakdown". The court then granted temporary custody and all decision-making power with respect to the child to the respondent. Visitation with the petitioner was again ordered to be supervised by his mother.

At the conclusion of the trial, the Supreme Court, *inter alia,* denied the petition, dismissed the writ of habeas corpus, awarded the respondent sole custody of the child and exclusive decision-making power with respect to him, and ordered visitation by the petitioner to be supervised at all times by a person not related to him.

The central, most disturbing, and one of the only uncontested issues in this case, is the mental and emotional deterioration of this child. Despite examination by many mental health professionals, it remains unresolved whether he was sexually abused, and, if so, by whom. Nevertheless, the child suffers from a disorder causing him, at times, to exhibit uncommonly belligerent, aggressive, antisocial behavior toward other children and adults. This behavior has resulted in his expulsion from schools and other programs. The record details several instances of sexual misbehavior by the child, of occasions when he licked his hands, feet, arms and furniture, and when he seemed to lose touch with reality.

This child has been taken from one therapist to another, sometimes without the knowledge or consent of the other parent. The amount of time each professional spent with the child and/or his parents varied, as did the settings in which they conducted their sessions. They were not all provided with the same materials concerning the family history before rendering their opinions so, understandably, the testimony of the experts at trial was conflicting.

In custody matters, which turn on assessments of the credibility of witnesses and, most importantly, on the character and temperament of the parties, the findings of the trial court must be accorded great respect *(Matter of Irene O.,* 38 NY2d 776). Appellate courts are reluctant to substitute their own assessment of these subjective factors for that of the nisi prius court *(People ex rel. Portnoy v Strasser,* 303 NY 539; *Eschbach*

*v Eschbach,* 56 NY2d 167). That observation is particularly pertinent here, where the same Judge has presided over this matter since August of 1988. The trial lasted approximately seven months, with 80 days of court time. The record consists of 20 volumes comprising more than 12,000 pages.

Courts must make every effort, in determining custody, to resolve "what is for the best interest of the child, and what will best promote its welfare and happiness" (Domestic Relations Law § 70 [a]; § 240; *Eschbach v Eschbach, supra,* at 171; *Friederwitzer v Friederwitzer,* 55 NY2d 89). Some of the relevant factors to be considered are the existence of an agreement between the parties, the original placement of the child and the length of that placement, the individual needs of the child, the ability of each parent to provide financially for the child, the child's expressed preference, taking into account its age, maturity and the potential for influence having been exerted on it, and the continuation of familial relationships *(Eschbach v Eschbach, supra,* and cases cited therein; *Matter of Garvin v Garvin,* 176 AD2d 318, *lv denied* 79 NY2d 752). Primary consideration is to be given "the ability to provide for the child's emotional and intellectual development, the quality of the home environment and the parental guidance provided" *(Matter of Louise E. S. v W. Stephen S.,* 64 NY2d 946, 947; *Eschbach v Eschbach, supra).*

It is clear from the record that the trial court made a careful and studied review of all the relevant factors and that its determination awarding custody of the child to its mother is justified by the evidence. The court, as the trier of fact, was free to reject the testimony of the second court-appointed psychiatrist and of the experts retained by the petitioner and to credit the testimony of experts who testified on behalf of the respondent *(Clerk v Clerk,* 132 AD2d 456, *amended* 133 AD2d 328, *lv denied* 70 NY2d 611; *Matter of Nicole V.,* 123 AD2d 97, *affd* 71 NY2d 112, *rearg denied sub nom. Matter of Francis Charles W.,* 71 NY2d 890; *and see, Delay v Rhinehart,* 176 AD2d 1211). The expert testimony rejected by the court was seriously undermined on cross-examination. Expert testimony may be rejected by the trial court "if it is improbable, in conflict with other evidence or otherwise legally unsound" *(Desnoes v State of New York,* 100 AD2d 712, 713). The fact that an expert has been designated or appointed by the court, does not, in any way, require that the court accept the opinion of that expert.

The Trial Judge had the unique advantage of having ob-

served the parties since 1988. We find her assessment of their character, temperament and capacity to fulfill their responsibilities to have been soundly made. The court noted at one point, that the petitioner seemed unable to care for himself, much less a child. His home was found to be unsanitary and unkempt *(see, Matter of Louise E. S. v W. Stephen S., supra)*. His appearance on the witness stand, on one occasion, prompted the court to observe that he seemed to be having a "nervous breakdown". His frequent stress-related ailments, his self-described "emotional paralysis", and his repeated change of counsel caused frequent delays in the proceedings, despite the fact that the continuation of the custody litigation was clearly having a deleterious effect on the child. The court also noted that it was often unable to discern any indication of emotion from the petitioner's expression, even when testifying to subjects which purportedly caused him great concern. In distinction, the court observed the pained expression on the respondent's face during testimony concerning her son's behavioral problems.

According to witnesses, prior to the parties' separation, the petitioner paid little attention to his son. Once the parties separated, however, he interfered with the child's therapy sessions while resisting therapy himself. The court, as well as a psychologist the petitioner consulted, found him to be lacking in flexibility, obsessive, intimidating and self-destructive.

The respondent, on the other hand, provided primary care for the child, who has resided with her since birth, and sought appropriate treatment once his behavioral problems became evident. The child also resided with the respondent's son from a former marriage and had frequent contact with other family members, household staff and friends.

Most troubling is the indication from the record that the child's condition deteriorated after spending time alone with his father. While the allegations of sexual abuse against the petitioner, and against those upon whom the petitioner cast suspicion, were not established, the court could not find that this child was not abused. It is clear, however, that he is terribly disturbed. Further, as in so many other custody litigations, the totally innocent victim of the litigation itself is the child, whose emotional problems have been exacerbated through the very process by which they were sought to be alleviated.

The determination of the Supreme Court granting custody

of the child to the respondent and imposing supervised visitation on the petitioner has a sound basis in the record, and, we believe, will serve the best interest of this child.

We have considered the petitioner's remaining contentions and find them to be without merit.

Accordingly, the order of the Supreme Court, New York County (Jacqueline W. Silbermann, J.), entered May 9, 1991, which, *inter alia,* denied the petition, dismissed the writ of habeas corpus, awarded permanent, sole custody of the child to the respondent along with sole and exclusive decision-making power with respect to him and ordered visitation exercised by the petitioner with the child to be supervised, should be affirmed, without costs.

SULLIVAN, J. P., WALLACH, Ross and ASCH, JJ., concur.

Order of the Supreme Court, New York County, entered May 9, 1991, which, *inter alia,* denied the petition, dismissed the writ of habeas corpus, awarded permanent, sole custody of the child to the respondent along with sole and exclusive decision-making power with respect to him and ordered visitation exercised by the petitioner with the child to be supervised, is affirmed, without costs.